Filed 8/10/17

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| WILLIAM PARRISH et al., | ) | |
| | ) | |
| Plaintiffs and Appellants, | ) | |
| | ) | S228277 |
| v. | ) | |
| | ) | Ct.App. 2/3 B244841 |
| LATHAM & WATKINS et al., | ) | |
| | ) | Los Angeles County |
| Defendants and Respondents. | ) | Super. Ct. No. BC482394 |
| _____ | ) | |

To establish liability for the tort of malicious prosecution, a plaintiff must demonstrate, among other things, that the defendant previously caused the commencement or continuation of an action against the plaintiff that was not supported by probable cause. We have held that if an action succeeds after a hearing on the merits, that success ordinarily establishes the existence of probable cause (and thus forecloses a later malicious prosecution suit), even if the result is overturned on appeal or by later ruling of the trial court. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 818 (*Wilson*).) This principle has come to be known as the "interim adverse judgment rule."

In this case we are asked to decide whether the interim adverse judgment rule applies when a trial court had initially denied summary judgment, finding that a lawsuit had sufficient potential merit to proceed to trial, but concluded after trial that the suit had been brought in "bad faith" because the claim, even if

1

superficially meritorious, in fact lacked evidentiary support. The Court of Appeal answered that question in the affirmative. We agree and affirm.

## I.

## A.

This case arises from a trade secrets dispute over the manufacture of microbolometers, devices used in thermal imaging systems to detect infrared radiation. Plaintiffs William Parrish and E. Timothy Fitzgibbons served as officers of Indigo Systems Corporation (Indigo), a company in the microbolometer business. When FLIR Systems, Inc. (FLIR) acquired Indigo, both Parrish and Fitzgibbons joined the FLIR team. Approximately two years later, Parrish and Fitzgibbons left FLIR to start a new, competing venture.

FLIR and Indigo sued Parrish and Fitzgibbons for misappropriation of trade secrets. Among other things, they alleged that Parrish and Fitzgibbons had solicited venture capital for their new business by presenting a business plan that Fitzgibbons had developed while still employed by FLIR. Parrish and Fitzgibbons each moved for summary judgment. Among other things, they argued that Fitzgibbons had developed the business plan for the new venture before he joined Indigo, and that no trade secrets would be misappropriated in the plan's implementation. In their opposition to the summary judgment motions, FLIR and Indigo relied on the declarations of two experts who opined that the business plan could not be implemented "without using FLIR's and Indigo's proprietary trade secrets on the design and bulk manufacture of [certain] microbolometers."

The trial court denied the summary judgment motions. The court concluded that although Parrish and Fitzgibbons had "made a compelling argument that they [were] entitled to judgment," in light of the "highly technical" nature of the case, they had "failed to sustain their burden" of showing that their planned new business was not based on FLIR's and Indigo's intellectual property.

2

The court pointed in particular to evidence that Fitzgibbons made a presentation to FLIR's board of directors that, FLIR and Indigo argued, overlapped with the plan for his new business. The court explained that it was "unable to find as a matter of law, for purposes of this motion only, that [FLIR and Indigo] own none of the concepts for [Parrish and Fitzgibbons's] new business, that nothing in the [new] business plan made use of [FLIR's and Indigo's] proprietary confidential information, intellectual property, or work product, or that all concepts in the [new] plan were identical to those" contained in a plan drafted by Fitzgibbons before he joined Indigo. The court further concluded that even if Parrish and Fitzgibbons's business was not itself based on FLIR's and Indigo's intellectual property, FLIR and Indigo had "produced sufficient evidence, for example with the [expert] declarations, to raise a triable issue as to misappropriation of trade secrets" in the plan's implementation.

The case proceeded to a bench trial, after which the trial court denied FLIR's and Indigo's requests for relief. The trial court then awarded Parrish and Fitzgibbons their costs and attorney fees under the California Uniform Trade Secrets Act, Civil Code section 3426 et seq., which authorizes cost and fee awards to prevailing defendants "[i]f a claim of misappropriation [was] made in bad faith." (Civ. Code, § 3426.4.) The trial court relied on *Gemini Aluminum Corp. v. California Custom Shapes, Inc.* (2002) 95 Cal.App.4th 1249 (*Gemini*), which held that " 'bad faith' for purposes of section 3426.4 requires objective speciousness of the plaintiff's claim, as opposed to frivolousness, and [the plaintiff's] subjective bad faith in bringing or maintaining the claim." (*Id.* at p. 1262.) Here, the trial court concluded that FLIR and Indigo had initiated and pursued the action against Parrish and Fitzgibbons in both subjective and objective bad faith, "primarily for the anticompetitive motive" of preventing Parrish and Fitzgibbons from creating a new business that would compete with that of their former employers. The court

3

determined that FLIR and Indigo had relied on a legal theory of inevitable misappropriation "not supported by California law," and "knew, or should have known, that they did not have a sufficient evidentiary basis to initiate the lawsuit [or] continue the lawsuit through trial." The court also faulted FLIR and Indigo for certain shortcomings of the expert testimony on which they relied. Although the court recognized that it had denied Parrish's and Fitzgibbons's motions for summary judgment, it explained that it "had not heard all the evidence or considered witness credibility" at that stage. The court ultimately awarded Parrish and Fitzgibbons more than $1.6 million in fees and costs.

The Court of Appeal affirmed the award of fees and costs, upholding the trial court's finding that the suit against plaintiffs had been prosecuted in bad faith. (*FLIR Systems, Inc. v. Parrish* (2009) 174 Cal.App.4th 1270, 1274; see also *id.* at pp. 1275–1276, citing *Gemini*.) It also, as relevant here, rejected FLIR and Indigo's argument that the trial court was estopped from finding bad faith because the trial court had earlier denied a defense motion for summary judgment. (*FLIR Systems*, at p. 1282.) The appellate court explained that at the time the trial court ruled on the summary judgment motion, that court had not yet "heard all the evidence or considered witness credibility." (*Id.* at p. 1283.) The appellate court noted that the trial court had denied the summary judgment motion in part based on "expert declarations suggesting there was a scientific methodology to predict the likelihood of trade secret misuse," but at trial, the "experts admitted there was no valid scientific methodology to predict trade secret misuse and agreed that no trade secrets were misappropriated." (*Id.* at p. 1282.)

**B.**

Parrish and Fitzgibbons later brought a malicious prosecution claim against FLIR's and Indigo's lawyers in the trade secrets case: defendants Latham & Watkins LLP (Latham) and Latham partner Daniel Scott Schecter.

4

Defendants filed an anti-SLAPP motion under Code of Civil Procedure section 425.16 — that is, a special motion to strike a "strategic lawsuit against public participation (SLAPP)." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.) To prevail on such a motion, a defendant "must establish that the challenged claim arises from [protected] activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) If a defendant is able to do so, "the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Ibid.*) Defendants argued that Parrish and Fitzgibbons could not establish a probability of success because: (i) the malicious prosecution action was untimely filed; and (ii) the order denying summary judgment in the underlying trade secrets action established probable cause to prosecute that action. Parrish and Fitzgibbons's opposition brief challenged both points, but did not dispute that the malicious prosecution claim arose from protected activity; namely, from Latham and Schecter's prosecution of the earlier lawsuit. (See Code Civ. Proc., § 425.16, subd. (e); *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734.)

The trial court granted the motion to strike, deeming the action untimely under the one-year statute of limitations set out in Code of Civil Procedure section 340.6, subdivision (a) (section 340.6(a)). The court did not reach the probable cause issue.

Parrish and Fitzgibbons appealed. While their appeal was pending, the Court of Appeal decided *Roger Cleveland Golf Co., Inc. v. Krane & Smith, APC* (2014) 225 Cal.App.4th 660. In pertinent part, that case held that the one-year limitations period does not apply to a malicious prosecution suit filed against a former litigation adversary's attorney. (*Id.* at p. 677.) Instead, the court concluded, a two-year limitations period controls.

The Court of Appeal in this case relied on *Roger Cleveland* in rejecting the trial court's conclusion that the action was untimely. "[S]ince we have no cause to reverse our holding in *Roger Cleveland*," the court reasoned, and "[a]s Latham [and Schecter] concede[] the action is timely under [the two-year statute of limitations], . . . the trial court's rationale for granting the anti-SLAPP motion is no longer viable."

The Court of Appeal then considered whether the anti-SLAPP motion should have nevertheless been granted based on the interim adverse judgment rule. The court concluded that the trial court's summary judgment ruling in the underlying action established "probable cause in [that] action." The Court of Appeal relied solely on the trial court's determination that Parrish and Fitzgibbons "had 'failed to sustain their burden of proof on the motion' " — not on the superior court's conclusion that certain expert declarations gave rise to a material factual dispute. The Court of Appeal further held that the trial court's subsequent finding of "bad faith" under the California Uniform Trade Secrets Act, "based on the more complete record developed at trial," did not establish a lack of probable cause. In so holding, the court criticized the opinion of Division Four of the same district in *Slaney v. Ranger Ins. Co.* (2004) 115 Cal.App.4th 306.

Parrish and Fitzgibbons petitioned for review. While their petition was pending, this court issued its decision in *Lee v. Hanley* (2015) 61 Cal.4th 1225, which (i) held that the one-year statute of limitations in section 340.6(a) "applies to claims whose merits necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services" (*Lee*, at pp. 1236–1237); and (ii) "disapprove[d]" *Roger Cleveland* "to the extent [it was] inconsistent with [our] opinion" (*Lee*, at p. 1239). In particular, *Lee* criticized *Roger Cleveland*'s premise that section 340.6(a) should be understood " 'as a professional negligence statute' " (*Lee*, at p. 1239) — without analyzing *Roger*

6

*Cleveland*'s ultimate conclusion that section 340.6(a) is inapplicable to claims filed against a former litigation adversary's attorney. The answer to the petition argued that *Lee* provides an alternative basis for upholding the trial court's grant of defendants' special motion to strike.

We granted the petition for review. We now conclude that the Court of Appeal was correct to hold that the interim adverse judgment rule applies. Because we conclude the malicious prosecution suit was barred on that basis, we do not reach the limitations issue.

## II.

## A.

"The common law tort of malicious prosecution originated as a remedy for an individual who had been subjected to a maliciously instituted criminal charge, but in California, as in most common law jurisdictions, the tort was long ago extended to afford a remedy for the malicious prosecution of a civil action." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871 (*Sheldon Appel*).) The tort consists of three elements. The underlying action must have been: (i) initiated or maintained by, or at the direction of, the defendant, and pursued to a legal termination in favor of the malicious prosecution plaintiff; (ii) initiated or maintained without probable cause; and (iii) initiated or maintained with malice. (*Ibid.*; see *Zamos v. Stroud* (2004) 32 Cal.4th 958, 970 (*Zamos*); see also *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 297 (*Soukup*).)[1]

---

[1] A malicious prosecution claim will also lie if the defendant brought "an action charging multiple grounds of liability when some but not all of those grounds were asserted with malice and without probable cause." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 671 (*Crowley*).) This rule is not of consequence here.

7

The interim adverse judgment rule concerns the probable cause element of a malicious prosecution claim. In contrast to the existence of malice — a question of fact regarding "the subjective intent or purpose with which [a litigant] acted in" prosecuting the underlying action — the existence of probable cause is a question of law to be determined as an objective matter. (*Sheldon Appel*, *supra*, 47 Cal.3d at pp. 874, 875.) "[T]he probable cause element calls on the trial court to make an objective determination of the 'reasonableness' of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable," as opposed to whether the litigant subjectively believed the claim was tenable. (*Id.* at p. 878.) A claim is unsupported by probable cause only if " ' "any reasonable attorney would agree [that it is] totally and completely without merit." ' " (*Wilson*, *supra*, 28 Cal.4th at p. 817; accord, *Sheldon Appel*, at p. 885; *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650; see also *Zamos*, *supra*, 32 Cal.4th at p. 970.) "This rather lenient standard for bringing a civil action reflects 'the important public policy of avoiding the chilling of novel or debatable legal claims.' " (*Wilson*, *supra*, at p. 817.) The standard safeguards the right of both attorneys and their clients " ' "to present issues that are arguably correct, even if it is extremely unlikely that they will win." ' " (*Ibid.*, quoting *Flaherty*, *supra*, at p. 650.)

As we explained in *Wilson*, California courts have long embraced the so-called interim adverse judgment rule, under which "a trial court judgment or verdict in favor of the plaintiff or prosecutor in the underlying case, unless obtained by means of fraud or perjury, establishes probable cause to bring the underlying action, even though the judgment or verdict is overturned on appeal or by later ruling of the trial court." (*Wilson*, *supra*, 28 Cal.4th at p. 817.) This rule reflects a recognition that "[c]laims that have succeeded at a hearing on the merits, even if that result is subsequently reversed by a trial or appellate court, are not so

8

lacking in potential merit that a reasonable attorney or litigant would necessarily have recognized their frivolousness." (*Id.* at p. 818.) That is to say, if a claim succeeds at a hearing on the merits, then, unless that success has been procured by certain improper means, the claim cannot be "totally and completely without merit." (*Zamos*, *supra*, 32 Cal.4th at p. 970.) Although the rule arose from cases that had been resolved after trial, the rule has also been applied to the "denial of defense summary judgment motions, directed verdict motions, and similar efforts at pretrial termination of the underlying case." (*Wilson*, *supra*, 28 Cal.4th at p. 819; see also *id.* at pp. 817–820 & fn. 4, 824; *Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375 [denial of defense motion for summary judgment]; *Davis v. Butler* (1999) 240 Ga.App. 72 [same]; *Porous Media Corp. v. Pall Corp.* (8th Cir. 1999) 186 F.3d 1077 [denial of motion for directed verdict].)

In *Wilson*, we considered whether the interim adverse judgment rule applied to the denial of an anti-SLAPP motion. In that case, school teachers and administrators had sued protestors for harassment and defamation. Several of the defendants filed an anti-SLAPP motion. The trial court denied the motion, concluding, among other things, that the plaintiffs had demonstrated a probability of prevailing on the merits. The Court of Appeal, however, vacated the superior court's order denying the motion to strike as to certain defendants and, on remand, the trial court granted the anti-SLAPP motion and dismissed the action as to those defendants. Those defendants then filed a malicious prosecution action against certain plaintiffs and their attorneys. (*Wilson*, *supra*, 28 Cal.4th at pp. 815–816.) We concluded that the action failed because "a trial court's denial of [an anti-SLAPP] motion . . . on the ground that the plaintiff has established the requisite probability of success, establishes probable cause to bring the action, and precludes the maintenance of a subsequent malicious prosecution action, unless the prior ruling is shown to have been obtained by fraud or perjury." (*Id.* at

9

p. 820.)  "In denying a motion to strike on the ground that the plaintiff has established the requisite probability of success," we reasoned, a "trial court necessarily concludes that the plaintiff has substantiated a legally tenable claim through a facially sufficient evidentiary showing and that the defendant's contrary showing, if any, does not defeat the plaintiff's as a matter of law."  (*Id.* at p. 821.)  After all, "[a] claim that is legally sufficient and can be substantiated by competent evidence is . . . one that a 'reasonable attorney would have thought . . . tenable.' "  (*Ibid.*, quoting *Sheldon Appel*, *supra*, 47 Cal.3d at p. 885.)

We explained that it is of no moment that a trial court, in ruling on an anti-SLAPP motion, "determines only whether the plaintiff has substantiated a prima facie case and does not weigh one side's evidence against the other in the manner of a jury or court trying the merits."  (*Wilson*, *supra*, 28 Cal.4th at pp. 821–822.)  "A litigant or attorney who possesses competent evidence to substantiate a legally cognizable claim for relief does not act tortiously by bringing the claim, even if also aware of evidence that will weigh against the claim.  Plaintiffs and their attorneys are not required, on penalty of tort liability, to attempt to predict how a trier of fact will weigh the competing evidence, or to abandon their claim if they think it likely the evidence will ultimately weigh against them.  They have the right to bring a claim they think unlikely to succeed, so long as it is arguably meritorious."  (*Id.* at p. 822.)

We also recognized that the interim adverse judgment rule has its limits.  The rule applies only to rulings regarding the merits of the claim, not those that rest "solely on technical or procedural grounds."  (*Wilson*, *supra*, 28 Cal.4th at p. 823.)  And even where a ruling is based on the court's evaluation of the merits of the claim, the ruling does not establish the existence of probable cause if the ruling is "shown to have been obtained by fraud or perjury."  (*Id.* at p. 820.)  While plaintiffs and their attorneys have "the right to bring a claim they think

10

unlikely to succeed, so long as it is arguably meritorious" (*id.* at p. 822), they have no right to mislead a court about the merits of a claim in an attempt to procure a favorable ruling, and such a ruling can provide no reliable indication that the claim was objectively tenable.

## B.

Parrish and Fitzgibbons do not dispute that a summary judgment order on the merits can trigger application of the interim adverse judgment rule. They argue, rather, that the rule should not apply here because after initially denying the defense motion for summary judgment, the trial court made a posttrial finding that FLIR and Indigo had brought the suit in "bad faith" for purposes of the California Uniform Trade Secrets Act. Even assuming that the trial court's bad faith ruling should be imputed to defendants here, we disagree.

As *Wilson* makes clear, whether an interim ruling is "subsequently reversed by [a] trial or appellate court" has no bearing on the probable cause inquiry. (*Wilson*, *supra*, 28 Cal.4th at p. 818; see also, e.g., *Crowley*, *supra*, 8 Cal.4th at p. 692, fn. 15.) In *Wilson*, for example, the fact that the order denying the anti-SLAPP motion was vacated — and the motion ultimately granted — posed no obstacle to our concluding that the denial established probable cause to bring suit. (*Wilson*, *supra*, at p. 817.) Likewise here, the summary judgment ruling in favor of FLIR and Indigo establishes that their position had arguable merit, whether or not, after trial, the court wished it had ruled against them.

Unlike a finding that the summary judgment ruling was obtained by fraud or perjury, the trial court's posttrial finding that the suit was brought in "bad faith" within the meaning of the California Uniform Trade Secrets Act does not vitiate the trial court's earlier finding that FLIR's and Indigo's suit had some arguable merit. The trial court's finding of "bad faith" rested on two conclusions: that the suit had been brought in "subjective bad faith" — that is, for the subjective

11

purpose of preventing Parrish and Fitzgibbons from launching a competing enterprise — and in "objective bad faith," meaning that the suit was objectively "specious." Neither conclusion is inconsistent with the court's earlier determination that the suit had sufficient arguable merit to survive summary judgment.

For purposes of the malicious prosecution tort, the existence of subjective bad faith is relevant to the question whether the suit was brought with malice, which, as our cases have made clear, concerns a litigant's subjective belief. (E.g., *Sheldon Appel*, *supra*, 47 Cal.3d at p. 874.) But it is a separate question whether, objectively speaking, defendants' suit was supported by probable cause. And as to that point, the trial court's finding of objective bad faith in the underlying action was not a finding that the action completely lacked merit. The trial court and Court of Appeal in the underlying action relied on the definition of bad faith set out in *Gemini*, *supra*, 95 Cal.App.4th at page 1262.[2] The Court of Appeal in *Gemini* reasoned that a finding that an action was prosecuted in bad faith did *not* require that " '[a]ny reasonable attorney would agree [that the action] is totally and completely without merit.' " (*Gemini*, at p. 1262, quoting *In re Marriage of Reese & Guy* (1999) 73 Cal.App.4th 1214, 1220–1221.) Instead, a court need only find "objective speciousness," which it may do even if an action "may superficially

---

[2]     We have no occasion to pass on the merits of the superior court's and Court of Appeal's understanding of the "bad faith" inquiry called for by the California Uniform Trade Secrets Act. (Civ. Code, § 3426.4.) Nor do we express any view on the description of that inquiry set out in *Gemini*, *supra*, 95 Cal.App.4th at pages 1261–1263. The issue in this case is not how the courts should have evaluated the issue of bad faith for purposes of the California Uniform Trade Secrets Act, but instead how their actual evaluation bears on the issue of probable cause for purposes of this malicious prosecution action.

12

appear to have merit." (*Gemini*, at p. 1262.) By contrast, we have made clear that "[o]nly those actions that any reasonable attorney would agree are totally and completely without merit may form the basis for a malicious prosecution suit." (*Zamos*, *supra*, 32 Cal.4th at p. 970.) Because the superior court's finding of bad faith in this case did not entail a finding that "any reasonable attorney would agree" that the action was "totally and completely without merit" (*ibid.*), the finding of bad faith did not invalidate the trial court's earlier conclusion, at the summary judgment stage, that the suit had at least some arguable merit.[3]

In resisting this conclusion, Parrish and Fitzgibbons rely on *Slaney v. Ranger Ins. Co.*, *supra*, 115 Cal.App.4th 306 (*Slaney*). In *Slaney*, the insurer had denied an insurance claim for damage to an aircraft. (*Id.* at p. 309.) Slaney had "prepared an estimate for repair of the aircraft in support of the claim." (*Ibid.*) When the insureds sued, the insurer cross-complained, alleging that the insureds and Slaney had "presented a fraudulently excessive claim." (*Ibid*.) Slaney initially moved unsuccessfully for summary judgment but successfully renewed the motion after discovery revealed that the insurer had not, as it had claimed, in fact relied on Slaney's allegedly excessive estimate. In entering judgment, the court found that the insurer's cross-complaint was " 'without any substantive basis

---

[3]    Because the trial court was not applying the relevant standard for probable cause, we do not understand it to have found FLIR and Indigo's action to be frivolous when it concluded that FLIR and Indigo "knew, or should have known, that they did not have a sufficient evidentiary basis to initiate the lawsuit [or] continue the lawsuit through trial." We also note that much of the court's bad faith analysis was based on its assessment of witness credibility, and while such assessments will often determine who wins a lawsuit, they ordinarily will not establish that litigation was untenable from the outset. (See *Wilson*, *supra*, 28 Cal.4th at p. 822 ["Plaintiffs and their attorneys are not required, on penalty of tort liability, to attempt to predict how a trier of fact will weigh the competing evidence . . . ."].)

13

in law and/or fact.' " (*Id.* at p. 313, italics omitted.) "After a jury trial, the insureds prevailed and obtained an award of compensatory damages in excess of $1 million for bad faith. The jury also concluded that [the insurer's] denial of the claim, based in part upon its assertion that the insureds and Slaney were attempting to defraud it, was malicious. Punitive damages in excess of $7 million were assessed." (*Id.* at p. 309.)

Slaney sued for malicious prosecution. (*Slaney*, *supra*, 115 Cal.App.4th at p. 309.) The insurer filed an anti-SLAPP motion, relying on the interim adverse judgment rule. (*Ibid.*) The trial court denied the motion, and the Court of Appeal affirmed. Based on the grant of summary judgment, the jury's finding that the insurance claim had been denied in bad faith, and the finding of malice underlying the jury's punitive damages award, the Court of Appeal thought it "reasonable to infer that the jury concluded [that the insurer's] theory of conspiracy to defraud between Slaney and the [insureds] was itself fraudulent and prosecuted in bad faith." (*Id.* at p. 321.) "This," the court continued, "along with the ultimate grant of summary judgment in favor of respondent is sufficient to offset the first denial of the motion for summary judgment and support inferences of lack of probable cause and malice." (*Ibid.*)

Regardless of whether the Court of Appeal correctly interpreted the meaning of the jury's findings in *Slaney* — a question on which we need take no position here — the court's interpretation of those findings distinguishes that case from this one. In concluding that the interim adverse judgment rule did not apply, the Court of Appeal in *Slaney* did not rely solely on the jury's conclusion that the denial of insurance coverage demonstrated the insurer's bad faith or malice, but on the jury's supposedly implicit conclusion that the insurer's cross-claim of conspiracy to defraud was "itself *fraudulent*." (*Slaney*, *supra*, 115 Cal.App.4th at p. 321, italics added.) We have, as noted, made clear that the interim adverse

14

judgment rule does not apply when the adverse judgment in question has been "shown to have been obtained by fraud or perjury." (*Wilson*, *supra*, 28 Cal.4th at p. 820.) The *Slaney* decision can be understood as an attempt, right or wrong, to give force to that principle. The decision does not establish, however, that a finding of bad faith under the California Uniform Trade Secrets Act, standing alone, establishes a lack of probable cause.

We note, however, that if *Slaney* were instead understood to rest solely on the jury's finding of bad faith in the insurance bad faith case, the decision would raise significant concerns. Our cases make clear that, as a general rule, "the existence or nonexistence of probable cause is a legal question to be resolved by the court in the malicious prosecution case; litigants are thus protected against the danger that a lay jury would mistake a merely unsuccessful claim for a legally untenable one." (*Wilson*, *supra*, 28 Cal.4th at p. 817.)[4] Reliance on a jury verdict to infer a lack of probable cause creates a risk of committing a similar mistake. We made clear in *Wilson* that a person "who possesses competent evidence to substantiate a legally cognizable claim for relief does not act tortiously by bringing the claim, even if also aware of evidence that will weigh against the claim." (*Wilson*, *supra*, at p. 822.) We stressed that litigants "are not required, on penalty of tort liability, to attempt to predict how a trier of fact will weigh the competing evidence, or to abandon their claim if they think it likely the evidence will ultimately weigh against them." (*Ibid.*) And we explained that, instead, litigants

---

**4**     This is not to suggest that a jury may never play a role in the inquiry. "When there is a dispute as to the state of the defendant's knowledge and the existence of probable cause turns on resolution of that dispute, . . . the jury must resolve the threshold question of the defendant's factual knowledge or belief." (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 881; cf. *id.* at p. 874 [jury may decide malice element].)

"have the right to bring a claim they think unlikely to succeed, so long as it is arguably meritorious." (*Ibid.*) Reliance on a verdict to raise doubts about probable cause threatens to impinge on these principles. A defense verdict may reflect the weight of the evidence adduced at trial, rather than whether the evidence was sufficient to support the prosecution of a claim.

## C.

Parrish and Fitzgibbons argue that even if the trial court's conclusion that the suit was objectively specious, standing alone, does not negate the effect of the interim adverse judgment rule, the underlying findings supporting that conclusion demonstrate that probable cause was lacking. In particular, they contend that the trial court "concluded that sanctions . . . were not barred under the interim adverse judgment rule due to the denial of summary judgment . . . because the expert declarations submitted in support of the summary judgment opposition were materially false." In support of this argument, they point to the Court of Appeal's opinion in the underlying action, which states that the expert declarations submitted at the summary judgment stage suggested that "there was a scientific methodology to predict the likelihood of trade secret misuse" — a suggestion that was dispelled at trial, when the experts testified that no such methodology exists.

Parrish and Fitzgibbons's argument rests on an unlikely reading of the record in the underlying action. Neither of the expert declarations in question contains any assertion that a scientific methodology exists to predict the likelihood of trade secret misuse. If the courts below understood them to suggest otherwise, that understanding may simply reflect lack of clarity, as opposed to falsity. But even accepting Parrish and Fitzgibbons's premise for the sake of argument, we reject their invitation to create an exception to the interim adverse judgment rule

16

for cases in which litigants or their lawyers inadvertently submit "materially false facts" of this sort in support of their claims.**5**  We have made clear that a court determining whether a claim was supported by probable cause should rely on "the facts known to the [litigant]" accused of malicious prosecution.  (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 878.)  Litigants, we have explained, need not "attempt to predict how a trier of fact will weigh the competing evidence, [n]or to abandon their claim[s] if they think it likely the evidence will ultimately weigh against them."  (*Wilson*, *supra*, 28 Cal.4th at p. 822; see *id.* at p. 822, fn. 6 [litigant may have incomplete information at the outset of a case]; see also *Soukup*, *supra*, 39 Cal.4th at p. 292 [" 'A litigant will lack probable cause for his action . . . if he relies upon facts which he has no reasonable cause to believe to be true . . . .' " (quoting *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 164–165)].)  It follows that if the facts known to the litigant could support a set of inferences that would justify a favorable ruling on the merits, the litigant may rely on them in bringing suit.  The interim adverse judgment rule applies even if the court later rules, after the evidence has been subject to adversarial testing, that the inferences have proved false.

Of course, when a litigant relies on evidence that she knows to be false, she is not entitled to reap the benefits of the interim adverse judgment rule by deceiving a court into believing that her claim has merit.  But no "materially false facts" exception is necessary to address that concern, because we have already

---

**5**     To the extent Parrish and Fitzgibbons suggest that Latham and Schecter made factual claims with actual or constructive knowledge of the claims' falsity, the suggestion bears on whether the fraud or perjury exception should have applied — an issue that we deem not properly before us, as we granted this case to resolve whether a "bad faith" exception exists separate and apart from the long-recognized fraud or perjury exception.

17

recognized that the rule does not apply to interim decisions "shown to have been obtained by fraud or perjury." (*Wilson*, *supra*, 28 Cal.4th at p. 820; cf. *Mary Pickford Co. v. Bayly Bros., Inc.* (1939) 12 Cal.2d 501, 520 ["Fraud . . . involves the . . . requirement that the [person making representations] knew, or, in the exercise of reasonable diligence should have known, that his representations were false."].)

Parrish and Fitzgibbons's argument for recognizing a broader "materially false facts" exception relies primarily on dicta from *Roberts v. Sentry Life Insurance*, *supra*, 76 Cal.App.4th 375. In that case, the Court of Appeal held that while the denial of a summary judgment motion "in an earlier case normally establishes [that] there was probable cause to sue," "there may be situations where denial of summary judgment should not irrefutably establish probable cause." (*Id.* at p. 384.) "For example," the court continued, "if denial of summary judgment was induced by materially false facts submitted in opposition, equating denial with probable cause might be wrong." (*Ibid.*) The court in *Roberts* did not hold, however, that "materially false facts" prevented application of the interim adverse judgment rule in that case, and thus had no occasion to specify the contours of the exception to which it alluded. Given *Wilson*'s recognition that a litigant may rely on evidence that ultimately fails to persuade a fact finder, the interpretation Parrish and Fitzgibbons would have us adopt here is not tenable.

Parrish and Fitzgibbons also rely on *Carpenter v. Sibley*, in which we referred to a "general rule" that no presumption of probable cause exists when a prior judgment (in a criminal case) " 'was procured by fraud, perjury or subornation of perjury, *or other unfair conduct*.' " (*Carpenter v. Sibley* (1908) 153 Cal. 215, 218, italics added.) In the more than 100 years since we recited that "general rule," however, we have cited *Carpenter* only three times — and never for the proposition that "unfair conduct" includes inadvertent reliance on factual

18

inferences that turn out to be unsupported at trial. (See *Wilson*, *supra*, 28 Cal.4th at p. 817, fn. 2; *Bealmear v. So. Cal. Edison Co.* (1943) 22 Cal.2d 337, 340; *Roos v. Harris* (1928) 203 Cal. 201, 202.)

Parrish and Fitzgibbons further contend that, without an exception for adverse rulings based on "materially false facts," "so long as the party prosecuting the underlying action could establish that the evidence it submitted in opposition to the summary judgment motion was not the product of fraud or perjury, then that summary judgment denial conclusively establishes probable cause and the malicious prosecution action will forever fail — even though the underlying plaintiff clearly and knowingly continued to prosecute that action in the absence of probable cause." The premise of this argument is faulty. As we held in *Zamos*, "the tort of malicious prosecution . . . include[s] continuing to prosecute a lawsuit discovered to lack probable cause." (*Zamos*, *supra*, 32 Cal.4th at p. 966.) That means that there may be circumstances in which an interim ruling rendered at one point in the litigation will not, due to intervening circumstances, establish the existence of probable cause to continue the litigation. Accordingly, we need not carve out any general exception for inadvertent reliance on factual inferences that later prove to be unsupported to avoid the outcome Parrish and Fitzgibbons fear.[6]

---

[6] Although Parrish and Fitzgibbons make a passing argument that defendants maliciously continued to prosecute the underlying action, they did not develop any such claim before the rehearing stage in the Court of Appeal. Here, too, they devote scant attention to the issue, focusing instead (and properly so) on the issue that prompted our grant of review: the significance of the trial court's "bad faith" finding. Under the circumstances, we decline to reach any question of malicious continuation. (See Cal. Rules of Court, rule 8.516(b)(3).) We observe, however, that Parrish and Fitzgibbons have not identified any changed circumstances that could have rendered it objectively unreasonable for defendants to continue litigating the action once the interim ruling established the existence of probable cause.

Moreover, as noted, the trial court in the underlying action denied summary judgment because of both the expert declarations and because of questions concerning whether Parrish and Fitzgibbons's business plan had made use of proprietary information. The Court of Appeal concluded that the trial court's denial of summary judgment on the basis of the business plan issue was itself sufficient to invoke the interim adverse judgment rule. Parrish and Fitzgibbons contend, however, that this was a "procedural or technical" rationale, rather than one "regarding the potential merit of the action." (*Wilson*, *supra*, 28 Cal.4th at p. 823.) We disagree. As the Court of Appeal ably explained, Parrish and Fitzgibbons sought to prevail on summary judgment "by demonstrating [that] the new business plan was based on a prior business plan Fitzgibbons prepared [before he joined Indigo], as opposed to the 2004 plan . . . developed at Indigo and presented to FLIR. As the trial court noted in its written ruling, FLIR disputed this contention in opposing summary judgment by citing the purportedly different business plans, while arguing the plans were substantively the same. Consistent with that contention, the trial court concluded, after comparing the 1999, 2004 and new business plans, that it was 'unable to find as a matter of law . . . that [FLIR] own[s] none of the concepts for [the] new business, that nothing in the [new] business plan made use of [FLIR]'s proprietary confidential information, intellectual property, or work product, or that all concepts in the [new] plan were identical to those in the 1999 plan.' Though the court framed its conclusion in terms of [Parrish and Fitzgibbons's] failure to sustain their burden as the moving part[ies], the necessary implication of the court's ruling is that the evidence raised a triable issue of material fact. [Citation.] This is not a 'technical ground,' but rather an acknowledgement that FLIR's claim had some conceivable merit."

## III.

The denial of summary judgment in the underlying trade secrets action established probable cause to bring that action.  Because that action was supported by probable cause, Parrish and Fitzgibbons cannot "establish[] a probability of success" on their malicious prosecution claim.  (*Baral*, *supra*, 1 Cal.5th at p. 384.) We thus affirm the judgment of the Court of Appeal.


**KRUGER, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**

21

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Parrish v. Latham & Watkins

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 238 Cal.App.4th 81
**Rehearing Granted**

_____

**Opinion No.** S228277
**Date Filed:** August 10, 2017

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** James R. Dunn

_____

**Counsel:**

Eagan Avenatti, Michael J. Avenatti, Scott H. Sims; Panish, Shea & Boyle, Brian J. Panish, Adam K. Shea, Kevin R. Boyle; Esner, Chang & Boyer and Stuart B. Esner for Plaintiffs and Appellants.

Mesisca Riley & Kreitenberg, Dennis P. Riley and Rena E. Kreitenberg as Amici Curiae on behalf of Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, Theodore J. Boutrous, Jr., Julian W. Poon, Jeremy S. Smith; McKool Smith Hennigan, J. Michael Hennigan and Michael Swartz for Defendants and Respondents.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, Bartley L. Becker and Kenneth C. Feldman for Lawyers Mutual Insurance Company as Amicus Curiae on behalf of Defendants and Respondents.

Buchalter Nemer, Harry W.R. Chamberlain II and Robert M. Dato for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendants and Respondents.

Munger, Tolles & Olson, Mark B. Helm and John F. Muller for Attorney's Liability Assurance Society, Inc., Baker & McKenzie, Peter D. Engstrom, Bryan Cave LLP, John W. Amberg, DLA Piper LLP (US), Charles L. Deem, Fish & Richardson P.C., John W. Thornburgh, Gibson, Dunn & Crutcher LLP, Kevin S. Rosen, Greenberg Traurig, LLP, Jeff E. Scott, Irell & Manella LLP, Harry Mittleman, McGuireWoods LLP, Leslie M. Werlin, Morrison & Foerster LLP, Douglas L. Hendricks, Philip T. Besirof, O'Melveny & Myers LLP, Martin S. Checov, Paul Hastings LLP, Eve M. Coddon, Reed Smith LLP, Kurt C. Peterson, Squire Patton Boggs (US) LLP and Adam R. Fox as Amici Curiae on behalf of Defendants and Respondents.

Manatt, Phelps & Phillips, Benjamin G. Shatz, Sarah E. Gettings; Greines, Martin, Stein & Richland, Alana H. Rotter and Cynthia E. Tobisman for Los Angeles County Bar Association and Beverly Hills Bar Association as Amici Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Stuart B. Esner
Esner, Chang & Boyer
234 East Colorado Boulevard, Suite 975
Pasadena, CA  91101
(626) 535-9860

Theodore J. Boutrous, Jr.
Gibson, Dunn & Crutcher
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000