Filed 5/19/25  Anais Enterprises v. CREF3 Warner Owner, LLC CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ANAIS ENTERPRISES, INC., | |
| Plaintiff and Respondent, | G063526, G063527 |
| v. | (Super. Ct. No.30-2023-01313990) |
| CREF3 WARNER OWNER, LLC et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, John C. Gastelum, Judge. Reversed and remanded with directions. Motion for sanctions denied.

Allen Matkins Leck Gamble Mallory & Natsis, Rachel M. Sanders, Karine Akopchikyan and Marissa M. Dennis for Defendant and Appellant CREF3 Warner Owner, LLC.

Allen Matkins Leck Gamble Mallory & Natsis, Jeffrey R. Patterson and Matthew J. Marino for Defendants and Appellants Allen

Matkins Leck Gamble Mallory & Natsis, Rachel M. Sanders and Karine Akopchikyan.

Salisbury Group, Lisa G. Salisbury and Jessica Frey for Plaintiff and Respondent.

\* \* \*

Defendants—Allen Matkins Leck Gamble Mallory & Natsis, Rachel M. Sanders and Karine Akopchikyan (collectively the attorney defendants) and CREF3 Warner Owner, LLC—appeal from the trial court's order denying their special motion to strike based on the anti-SLAPP statute. (Code Civ. Proc.,[1] § 425.16.) Defendants were sued for malicious prosecution by Anais Enterprises, Inc. because CREF3 pursued a commercial unlawful detainer action against Anais after Anais tendered a rent payment check with conditional language that asserted cashing the check would create liabilities for defendants and another party.

The trial court denied defendants' anti-SLAPP motion, concluding that Anais carried its burden to show a sufficient probability of success. Defendants appeal from the denial of their motion, and Anais moves for frivolous appeal sanctions against defendants.

For the reasons discussed below, we agree with defendants that, based on undisputed evidence, CREF3's unlawful detainer action rested on probable cause, thus defeating Anais's ability to show a sufficient probability of success on its malicious prosecution theory. We direct the trial court to vacate its order denying the anti-SLAPP motion and enter a new order granting the motion. We deny Anais's sanctions motion.

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

2

FACTS

I.

NEW OWNER'S UNLAWFUL DETAINER ACTION

*A. Change in Ownership and the Purported Rent Forbearance Agreement*

In 2002, Anais entered a lease for commercial real property in Santa Ana (the property) with a prior owner. The lease terms included a seven-year lease extension option that Anais could exercise by March 2023. The lease also included two paragraphs covering conditional payment scenarios, which we quote from further below.

In April 2022 (all dates without mention of the year will refer to 2022), Greg Pearson, a member of CREF3's parent company,[2] met with Charlie Jakstis, the son of Anais's general manager. According to Jakstis, Pearson made comments that threatened Anais's leasehold interests.

The following month, CREF3 became the owner and assumed the rights and obligations of the lease. In May, counsel for CREF3 sent Anais's counsel an introductory letter that requested delivery of a purported rent forbearance agreement.[3] Counsel was referencing Anais's counsel's claim that Anais had entered an agreement with the prior owner, "for [Anais] to pay . . . six . . . installments of COVID back rent when requested."

CREF3's position was that, as part of purchasing the property, CREF3 acquired the benefit of the "back rent" owed by Anais, which CREF3

---

[2] We need not determine which entity Pearson was acting as an agent for.

[3] The letter stated: "I understand that you represent [Anais], which is claiming that it entered into a forbearance agreement with the prior owner of the Property. Will you please send me that Forbearance Agreement as soon as possible?"

calculated to be about $88,000 for a period spanning about 18 months. Counsel for CREF3 and Anais exchanged six e-mails, concluding with the latter's counsel stating that CREF3 should secure its requested documentation from the prior owner.

On June 15, a Wednesday, CREF3 delivered to Anais a notice to pay rent within three business days or forfeit its right to possess the property. The notice demanded a payment of $16,200— representing rent owed for three months—to be applied toward the balance owed. CREF3 specified a property manager as its authorized agent for receiving the payment.

*B. Tender of Check and Subsequent Events*

After the weekend, Anais left a check for $16,200 at the property manager's office. The check included the following statements: "Paid under Protest. Cashing confirms violation of law by Landlord."

The parties dispute whether the check was left on Monday, June 20 (before the notice deadline expired), or shortly thereafter. They do not dispute, however, that on the morning of June 21, Anais's counsel sent an e-mail that stated in part: "Any processing or cashing of th[e] check subjects you, your firm, [the property manager] who prepared and signed the defective, void Notice and [CREF3] to liability for which all rights and remedies are reserved." The e-mail also demanded: "Confirm that you understand and [the property manager's company] understands that processing the check paid under protest will be more evidence of malice."

CREF3 did not deposit the check and instead filed an unlawful detainer action against Anais (the UD Action). CREF3 later filed a motion for summary judgment (the MSJ) that the trial court (Judge Kimberly Knill) denied, concluding that a triable issue of material fact existed as to the

4

collective meaning of Anais's counsel's June 21 e-mail and the conditional language on Anais's check. After the denial, CREF3 filed a request for dismissal of its UD Action without prejudice, which the court granted.

## II.

### MALICIOUS PROSECUTION LAWSUIT AND ANTI-SLAPP MOTION

Three months later, Anais filed the underlying lawsuit against defendants, alleging a single cause of action for malicious prosecution. CREF3 timely filed the underlying anti-SLAPP motion.[4]

The trial court (Judge John C. Gastelum) denied defendants' motion. The court agreed with defendants that Anais's lawsuit targeted activity protected by the anti-SLAPP statute, but concluded that Anais met its burden to demonstrate a sufficient probability of success on its malicious prosecution theory. The court reasoned there was sufficient probability of findings at a trial that: (1) defendants had lacked probable cause to reject Anais's check as part of instituting the UD Action; and (2) defendants had acted with malice. CREF3 and the attorney defendants timely appealed and the parties stipulated to consolidate the appeals. Anais thereafter filed a motion for frivolous appeal sanctions against defendants.

## DISCUSSION

## I.

### STANDARD OF REVIEW AND ANTI–SLAPP PRINCIPLES

"We review de novo the grant or denial of an anti-SLAPP motion." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.) "The procedure made available to defendants by the anti-SLAPP statute has a distinctive two-part structure. [Citations.] A court

---

[4] The attorney defendants joined in CREF3's anti-SLAPP motion.

may strike a cause of action only if the cause of action [both] (1) arises from an act in furtherance of the right of petition or free speech 'in connection with a public issue,' and (2) the plaintiff has not established 'a probability' of prevailing on the claim. [Citation.]" (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619–620.) "A defendant satisfies the first step of the analysis by demonstrating that the 'conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) [of section 425.16]' [citation], and that the plaintiff's claims in fact *arise* from that conduct [citation]." (*Id.* at p. 620.)

The California Supreme Court has "described th[e] second [part of anti-SLAPP analysis] as a 'summary-judgment-like procedure.' [Citation.]" (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) The moving defendant "can prevail either by establishing a defense or the absence of a necessary element," but "[i]f there is a conflict in the evidence (the existence of a disputed material fact), the anti-SLAPP motion should be denied. [Citation.]" (*Billauer v. Escobar-Eck* (2023) 88 Cal.App.5th 953, 964–965.) The overall purpose of the second prong analysis is to determine "whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." (*Baral,* at pp. 384–385.) Attorney fees and costs must be awarded for a successful anti-SLAPP motion. (§ 425.16, subd. (c)(1).)

## II.

### UNLAWFUL DETAINER AND MALICIOUS PROSECUTION PRINCIPLES

A commercial lease tenant who fails to pay rent by a validly noticed deadline can be subject to eviction through an unlawful detainer lawsuit. (Code Civ. Proc., § 1161.1.) "In commercial leases the landlord and commercial tenant may lawfully agree to notice procedures that differ from

6

those provided in the statutory provisions governing unlawful detainer." (*Culver Center Partners East #1, L.P. v. Baja Fresh Westlake Village, Inc.* (2010) 185 Cal.App.4th 744, 750.)

A successful malicious prosecution claim has three elements: that it "was (1) initiated or maintained by, or at the direction of, the defendants, and pursued to a legal termination in favor of the malicious prosecution plaintiff; (2) initiated or maintained without probable cause; and (3) initiated or maintained with malice." (*Roche v. Hyde* (2020) 51 Cal.App.5th 757, 787.) The question of probable cause involves a determination whether "'the prior action was legally tenable.'" (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 776 (*Parrish*).)

III.

ANALYSIS

On the first step of anti-SLAPP analysis, we agree with the parties that the conduct at issue here—defendants' filing of the UD Action— was protected by both subdivisions (e)(1) and (e)(2) of section 425.16 as petitioning activity. On the second step of analysis, we conclude Anais did not carry its burden to show a sufficient probability of prevailing because undisputed facts show that defendants' UD Action rested on probable cause. (§ 425.16, subd. (b)(1).)

"[T]he probable cause element [of a malicious prosecution theory] calls on the trial court to make an objective determination of the 'reasonableness' of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878 (*Sheldon Appel*); cf. *ibid*. ["the malice element is directly concerned with the *subjective* mental state of the defendant in instituting the prior

7

action"].) Consistent with the policy concerns underlying malicious prosecutions actions (*Parrish, supra*, 3 Cal.5th at p. 776), even if a party acted with malice, a prior action that objectively rested on probable cause will defeat a malicious prosecution claim (see *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1131 ["The bringing of a colorable claim is not actionable" because a "plaintiff in a malicious prosecution action must prove that the prior action was brought without probable cause"]).

Here, it was objectively reasonable for defendants to institute the UD Action instead of cashing Anais's conditional check because Anais's collective language—including its counsel's June 21 e-mail—purported to create terms of an agreement that went beyond merely protesting Anais's obligation to pay past rent owed. As quoted earlier, Anais's counsel claimed that the act of "processing or cashing" the check would (somehow) "subject[]" not only defendants but the property manager to "liability" and serve as "more evidence of malice."

The language connected to the tender of the check presented CREF3 with a Hobson's choice. CREF3 could either proceed with an unlawful detainer action designed to streamline litigation regarding rental payment obligations or expand the litigation menu (by cashing the check) to include additional issues regarding its property manager, "liability" outside of rent owed, and assertions of acting with "malice," as framed by Anais's counsel.

It is true that CREF3's MSJ in the UD Action was unsuccessful because the trial court there determined that the conditional check and June 21 e-mail language created at least one issue of material fact as to the meaning of the parties' mutual understanding about their dealings.[5] It is also

---

[5] The denial of the MSJ in the UD Action is not dispositive of any

8

true that the UD Action could have ultimately been decided against CREF3 based on a conclusion that Anais's tendered check was sufficient to preserve Anais's right to possession. But neither point establishes there was no probable cause for malicious prosecution purposes. (*Parrish, supra*, 3 Cal.5th at p. 776 ["A claim is unsupported by probable cause only if ""any reasonable attorney would agree [that it is] totally and completely without merit"""].)

None of the grounds the trial court based its probable cause decision on supports a conclusion that the UD Action totally and completely lacked merit. For example, the court relied on *Childs v. Eltinge* (1973) 29 Cal.App.3d 843, 845, for the proposition that a tenant may pay disputed rent under protest. The general principle is sound,[6] but it does not follow that a check that includes language that goes beyond protest renders a decision to reject the language (and the check) as a decision totally and completely lacking in legal merit.

The trial court also discussed the 24th paragraph of Anais's lease, which provided that: "Any payment by Lessee may be accepted by Lessor on

_____

point in this appeal. Although there is an "interim adverse judgment rule" that applies to "'defense summary judgment motions'" bearing on the question of probable cause, the rule's rationale—that a triable issue shows probable cause—does not apply to an adverse ruling on an *offensive* motion. (*Parrish, supra*, 3 Cal.5th at pp. 776–777.)

[6] Indeed, the 42nd paragraph of Anais's lease, titled "Performance Under Protest," tracked the proposition of *Childs v. Eltinge, supra*, 29 Cal.App.3d at pages 853-854, by stating: "If at any time a dispute shall arise as to any amount or sum of money to be paid by one Party to the other under the provisions hereof, the Party against whom the obligation to pay the money is asserted shall have the right to make payment 'under protest' and such payment shall not be regarded as a voluntary payment and there shall survive the right on the part of said Party to institute suit for recovery of such sum."

account of monies or damages due Lessor, notwithstanding any qualifying statements or conditions made by Lessee in connection therewith, which such statements and/or conditions shall be of no force or effect whatsoever unless specifically agreed in writing by Lessor at or before the time of deposit of such payment."

This language does not support affirming the denial of defendants' motion because "processing or cashing" the tendered check could reasonably have included indorsement by CREF3 (or its authorized agent). An indorsement could *arguably* have been consistent with "agree[ing] in writing . . . at . . . the time of deposit" with the statements asserted by Anais's tender. Again, the likelihood that such an argument would be persuasive in court is beside the point for the concept of probable cause. (*Parrish, supra*, 3 Cal.5th at p. 776.)

Based on our probable cause analysis, we conclude that Anais has not shown a sufficient probability of prevailing on its theory of malicious prosecution. Given our conclusion, we need not decide any other element that Anais had the burden to show, including the closer question on malice attributable to CREF3. We deny Anais's motion for sanctions pursuant to Code of Civil Procedure section 907 and California Rules of Court, rule 8.276.

## DISPOSITION

The order denying defendants' anti-SLAPP motion is reversed, and the matter is remanded. We direct the trial court to vacate its order and enter a new order granting the anti-SLAPP motion. Defendants shall recover their costs on appeal (Cal. Rules of Court, rule 8.278(a)(1) & (d)(2)) and, on remand, the trial court shall determine what attorney fees and costs should

10

be awarded to defendants pursuant to Code of Civil Procedure section 425.16, subdivision (c)(1).

O'LEARY, P. J.

WE CONCUR:

SANCHEZ, J.

MOTOIKE, J.