Filed 10/1/24  Simantob v. Akhtarzad CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JACK SIMANTOB et al., | B320753 |
| Plaintiffs and Respondents, | Los Angeles County Super. Ct. No. 20STCV39690 |
| v. | |
| SINA AKHTARZAD et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Michelle Williams Court, Judge.  Affirmed.

Benedon & Serlin, Wendy S. Albers and Kelly Riordan Horwitz for Defendants and Appellants.

Law Offices of Michael H. Rosenstein and Michael H. Rosenstein for Defendant and Appellant Sina Akhtarzad.

Ian J. Singer, in pro. per., for Defendant and Appellant Ian J. Singer.

Michael S. Drucker, in pro. per., for Defendant and Appellant Michael S. Drucker.

Timothy D. McGonigle Prof. Corp. and Timothy D. McGonigle; Greines, Martin, Stein & Richland, Robin Meadow, and John J. Metzidis for Plaintiffs and Respondents.

_____

**SUMMARY**

Plaintiffs Jack Simantob and the company he managed, 8451 Melrose Property, LLC (Melrose), sued Sina Akhtarzad and his lawyers, Foley Bezek Behle & Curtis (Foley Bezek), Michael S. Drucker and Ian J. Singer, for malicious prosecution of lawsuits concerning a commercial lease. Foley Bezek filed a special motion to strike the complaint under the anti-SLAPP (strategic lawsuit against public participation) statute. (Code Civ. Proc., § 425.16; further undesignated statutory references are to the Code of Civil Procedure.) Messrs. Akhtarzad, Drucker and Singer (collectively, defendants) filed joinders to the Foley Bezek motion.

Foley Bezek settled with plaintiffs and was dismissed from the case. The trial court denied the other defendants' anti-SLAPP motions, finding plaintiffs made a prima facie showing of facts that, if credited, would sustain a judgment against defendants for malicious prosecution.

We affirm the trial court's order.

**FACTS**

**1.    Background Facts**

The underlying litigation in this case began 15 years ago, in June 2009. This is Mr. Akhtarzad's third appeal. We recite the background facts as we described them in our previous opinions, without attribution.[1]

_____

[1]    See *8451 Melrose Property, LLC v. Akhtarzad* (May 28, 2020, B288963) [nonpub. opn.] [2020 Cal.App.Unpub. Lexis 3348;

2

In March 2008, Melrose and Mr. Akhtarzad entered into a lease for a commercial retail property at 8451 Melrose Avenue. The lease was for an 11-year term, with Mr. Akhtarzad to pay a fixed minimum annual rent of $660,000, with annual increases and other charges. The building had a front section for retail space and a two-story rear section permitted to be used as a warehouse. The lease stated Mr. Akhtarzad would use the property as a selective, first-class retail development, and would devote the entire premises to that use, "except for areas reasonably required for office or storage space uses" for the business conducted in the building. The lease anticipated Mr. Akhtarzad would engage in construction or renovation at the property.

In January 2009, rent for the property was due. Mr. Akhtarzad told Mr. Simantob he could not pay the rent and had no potential subtenants for the property. In February 2009, Melrose's attorney sent Mr. Akhtarzad a notice of abandonment. Mr. Akhtarzad sent Melrose a check for $25,000, yet he owed around $130,000. When Mr. Simantob asked Mr. Akhtarzad why he had sent the $25,000 check, Mr. Akhtarzad responded it was the last payment Melrose would receive, Melrose should not expect more, and Mr. Simantob should lease the property to a new tenant.

In March 2009, Mr. Simantob and Mr. Akhtarzad spoke again. Mr. Akhtarzad said he could do nothing with the property, and Melrose could have it back. Mr. Simantob made arrangements with Mr. Akhtarzad to retrieve the key to the property. Mr. Simantob found the property in disarray. The

_____

*8451 Melrose Property, LLC v. Akhtarzad* (July 30, 2013, B237052) [nonpub. opn.] [2013 Cal.App.Unpub. Lexis 5372].

3

building was stripped of everything, including fixtures. After cleaning up debris, Melrose attempted to lease the property again, but was unsuccessful.

On June 2, 2009, Melrose filed suit against Mr. Akhtarzad for breach of contract. Two weeks later, Mr. Akhtarzad filed a complaint against Mr. Simantob, alleging causes of action for breach of the lease, fraud, restitution and an accounting. Six months after that, in December 2009, Mr. Akhtarzad cross-complained against Melrose, alleging the same causes of action that he alleged against Mr. Simantob. In his answer to Melrose's first amended complaint, Mr. Akhtarzad asserted an affirmative defense of fraud and misrepresentation. The two lawsuits were consolidated.

## 2. Melrose's Summary Judgment Motion

In July 2010, Melrose moved for summary judgment, or in the alternative for summary adjudication, contending the undisputed facts showed Mr. Akhtarzad breached the lease and that his affirmative defenses and counterclaims were unsupported in fact or law.

Mr. Akhtarzad's opposition included his own declaration. Among other points, he stated that in deciding to lease the premises, he relied on Mr. Simantob's representations "that the entire area of the Premises was zoned for retail, that the Premises contained approximately 10,000 square feet of rentable area for retail space, and that no portion of the existing structures had been added illegally." Mr. Akhtarzad stated that in early February 2009, "I was able to reach a partial agreement with Jack Simantob to modify the Lease whereby the monthly rent beginning January 2009 would be decreased to . . . $25,000[]. Pending my receipt from [Melrose] of a written amendment to

4

memorialize our agreement to decrease the rent, the sum of $25,000 was paid to [Melrose] for rent on February 12, 2009." He declared that since February 17, 2009, Melrose "has excluded me from the Premises and has changed the locks thereby prohibiting me from occupying or using the Premises." And, "At no time on or before February 17, 2009 did I ever voluntarily abandon or vacate possession of the Premises nor have I ever notified or informed [Melrose] or Jack Simantob of any intention to abandon or vacate possession." Mr. Akhtarzad also declared he had suspended the tenant improvement work he was doing because of his uncertainty about the legality of the structure.

The trial court (Judge Holly E. Kendig) found Melrose had not properly noticed the motion for summary adjudication of issues, and had not complied with the Code of Civil Procedure with respect to summary adjudication issues. Judge Kendig therefore treated Melrose's motion as one for summary judgment. The court denied the motion.

At the hearing, the court said, among other things, that Melrose had failed to present admissible evidence in support of some facts. "But really the biggest factor here is probably the fact that I have a defendant who's effectively disputed a whole series of facts," which the court enumerated. "In essence, [Mr. Akhtarzad's] opposition shows that there's triable issues of material fact with respect to elements of the breach of contract and declaratory relief causes of action including whether or not a valid agreement exists and also as the issue of damages for the breach of contract claim. [¶] And [Mr. Akhtarzad's] opposition also reveals triable issues of fact exist with respect to [Mr. Akhtarzad's] defenses to the claims in the First Amended Complaint."

5

After entertaining arguments, the court stated: "So I don't see how we get close to this being done on summary judgment. I understand you think that the facts are very strong in the [Melrose's] favor, and they may well be. [¶] But what we have, . . . [Mr. Akhtarzad's] opposition reveals triable issues with respect to elements of the breach of contract. I mean, this whole issue of abandonment back and forth is in dispute as to what was—what exactly happened on that. And there's disputed facts about that. I can't decide those here. They have to go before a trier of fact." Further, "[t]here's issues about whether there's a valid agreement; there is issues on damages. And you're trying to get future damages . . . ."

### 3. The Ensuing Proceedings

The trial court conducted a bench trial in 2011 on the consolidated actions. Near the conclusion of Melrose's case, Mr. Akhtarzad dismissed his trial counsel (defendants Drucker and Singer) and began representing himself. In his own case, Mr. Akhtarzad offered testimony from two defense witnesses and examined Mr. Simantob. Mr. Akhtarzad did not testify.

The trial court (Judge Kendig) found in favor of Melrose on all claims. In a statement of decision, the court concluded Mr. Akhtarzad failed to present any credible evidence to support any of his claims or defenses. It awarded Melrose more than $8.1 million in damages.

Mr. Akhtarzad appealed. We reversed the judgment because of a change in the law. Mr. Akhtarzad had been prevented from introducing parol evidence to prove fraud as an affirmative claim and as a defense to Melrose's breach of contract claim; a California Supreme Court decision, issued while the

6

appeal was pending, overruled long-standing precedent on the issue.

**4.      Judge Thomas's Findings**

On remand, the parties stipulated to a second trial before a referee (Ret. Judge Robert W. Thomas).  Over the course of a 10-day trial, Mr. Akhtarzad sought to establish the lease was illegal and therefore unenforceable.  He argued Mr. Simantob built the second story to the warehouse portion of the premises sometime after purchasing the property in 1991, causing the building to exceed the maximum floor area permitted under the West Hollywood Municipal Code.  This, he argued, rendered the building unlawful and prevented him from occupying it.  Mr. Akhtarzad also argued the lease illegally required him to use the entire building for retail, which violated a restriction that the back portion be used as a warehouse.

After hearing all the evidence, Judge Thomas issued a 139-page statement of decision rejecting Mr. Akhtarzad's illegality defense and finding he breached the lease by failing to pay rent.  Judge Thomas concluded the lease was for a lawful purpose, noting it was not illegal to use the building as retail.  Further, there was no evidence Mr. Akhtarzad was prevented from using the building or obtaining necessary permits, and the City of West Hollywood never deemed the building illegal or took any other enforcement action.  Judge Thomas further found the "mystery" of when the warehouse's second story was built was "never satisfactorily solved."

Among other findings were these.

Mr. Akhtarzad's testimony "was inconsistent and controverted by other witnesses in numerous occasions and in

7

important areas. He also did not remember some important events."

Mr. Akhtarzad contended Mr. Simantob altered or doctored a survey of the property "to conceal the illegality of the second story to defraud Mr. Akhtarzad," but "there was no evidentiary support for that theory."

Mr. Simantob testified he was offered $25,000 to terminate the lease, and that Mr. Akhtarzad said that was the only money he would get and if the lease was not terminated his lawyers would engage in lengthy litigation and "crush" Mr. Simantob. Judge Thomas found Mr. Simantob's testimony credible, and corroborated by another witness's testimony that Mr. Akhtarzad had also offered that witness $25,000 to terminate a lease and told the witness he (Mr. Akhtarzad) wanted to cancel the witness's lease because the economy and rental market had collapsed. Mr. Akhtarzad denied all this and said he sent an e-mail to Mr. Simantob saying there were problems with the building, but the e-mails in evidence did not support Mr. Akhtarzad's version.

"Mr. Akhtarzad also prepared a declaration stating that the $25,000 he offered Mr. Simantob was for an agreed upon rent modification. That claim is found to be completely unsupported."

"If Mr. Akhtarzad was concerned about code violations or other illegalities, it would seem he would be complaining about them. There was no evidence of claims of illegalities until the lawsuit."

Mr. Akhtarzad said he released Vera Wang from his sublease of the property to her "because he did not want to break the law and get sued. There was no evidence presented to support that claim." William Mitchell, a representative of Vera

8

Wang, testified that Vera Wang decided not to go forward with the 8451 Melrose Avenue lease and instead went back to another Melrose Avenue location because of a change in business direction. Mr. Mitchell testified "there were no usage or illegality problems." "There was no evidence presented that Vera Wang would have had any problems with the 8451 Melrose Avenue Premises with the warehouse in the back."

Mr. Akhtarzad contended Mr. Simantob was "furious" that Mr. Akhtarzad "landed Vera Wang instead of himself," and "plotted how to take the Vera Wang lease away from Mr. Akhtarzad for his own profit" and "take it over for himself. There was no evidence presented to support that theory in any way."

Craig Bailey, the PMQ (person most qualified) for the City of West Hollywood, "testified that there was no reason to believe there were any violations or code compliance issues with respect to 8451 Melrose Avenue." "The City of West Hollywood has never deemed the building illegal or taken any action against it despite being encouraged to do so by Mr. Akhtarzad."

"There was never any evidence presented that Mr. Akhtarzad was prevented from using the Premises as a result of an[y] alleged illegalities or denied the opportunity to obtain necessary permits."

"Contrary to Mr. Akhtarzad's claims, it is found the credible evidence demonstrated that Mr. Akhtarzad's reason for attempting to terminate the Lease was due to the 2008 rental market collapse and Mr. Akhtarzad's financial problems."

Judge Thomas concluded Melrose's total damages were more than $10.5 million. The trial court adopted Judge Thomas's

9

statement of decision and entered judgment in favor of Melrose and Mr. Simantob.

Mr. Akhtarzad again appealed. We affirmed the judgment, rejecting Mr. Akhtarzad's contention the lease was an illegal contract and therefore unenforceable. We found Mr. Akhtarzad did not prove the building was an unlawful structure and the lease did not require him to use the building unlawfully.

**5.     This Lawsuit**

On October 14, 2020, Melrose and Mr. Simantob filed this action for malicious prosecution against Mr. Akhtarzad's lawyers, and in December 2020 added Mr. Akhtarzad as a defendant. As explained at the outset, the Foley Bezek firm filed an anti-SLAPP motion; Mr. Akhtarzad and two other lawyers, Mr. Drucker and Mr. Singer, filed joinders to the Foley Bezek motion; Foley Bezek settled with plaintiffs and was dismissed from the case. On February 28, 2022, the trial court denied the other defendants' anti-SLAPP motions.

After observing that the anti-SLAPP statute may be invoked against claims of malicious prosecution, the court addressed whether plaintiffs had made a prima facie showing of facts necessary to sustain a favorable judgment. The court found plaintiffs made the necessary showing that Mr. Akhtarzad's actions were brought without probable cause and with malice.

The trial court cited the following evidence.

Judge Kendig determined at the 2011 bench trial that Mr. Akhtarzad discharged his attorneys midtrial, chose not to testify, and " 'put on virtually no evidence at all to support his claims.' "

The judgment after the 2011 bench trial was reversed, not on the merits.

10

After the second trial, Judge Thomas denied Mr. Akhtarzad's breach of contract claim, finding " '[t]here was never any evidence presented that Mr. Akhtarzad was prevented from using the Premises as a result of an [*sic*] alleged illegalities or denied the opportunity to obtain necessary permits.' " Judge Thomas also found "[t]here was no credible evidence of fraud, either:  '[t]he credible evidence was that Mr. Akhtarzad executed the Lease without relying on any representations or statements by Mr. Simantob on behalf of [Melrose].' "

The trial court also found defendants withdrew their argument that plaintiffs could not demonstrate malice.

As for defendants Drucker and Singer, the trial court stated they were attorneys and counsel of record for Mr. Akhtarzad in the underlying complaint and cross-complaint against plaintiffs, and "[f]or the reasons stated above," plaintiffs carried their burden of producing evidence sufficient to sustain a favorable judgment if the evidence were credited.

Defendants filed timely notices of appeal from the trial court's order.

## DISCUSSION

A defendant may bring a special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ."  (§ 425.16, subd. (b)(1).)  When ruling on an anti-SLAPP motion, the trial court employs a two-step process.

The moving defendant must establish the claims arise from the defendant's protected activity.  If the defendant does so, " 'the plaintiff must then demonstrate its claims have at least "minimal merit." ' "  (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th

11

871, 884.)  "The court does not weigh evidence or resolve conflicting factual claims. . . .  It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385.)  " '[C]laims with the requisite minimal merit may proceed.' "  (*Id.* at p. 385.)

Our review is de novo.  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)

A malicious prosecution case arises from protected activity, so our only task is to determine whether plaintiffs produced sufficient evidence to sustain a favorable judgment if their evidence is believed.

The malicious prosecution tort "consists of three elements. The underlying action must have been:  (i) initiated or maintained by, or at the direction of, the defendant, and pursued to a legal termination in favor of the malicious prosecution plaintiff; (ii) initiated or maintained without probable cause; and (iii) initiated or maintained with malice."  (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 775 (*Parrish*).)

The favorable termination element is not at issue. Defendants contend plaintiffs cannot establish defendants initiated or maintained Mr. Akhtarzad's complaint against Mr. Simantob and his cross-complaint against Melrose without probable cause, and cannot establish they acted with malice either.  They also contend Mr. Simantob's malicious prosecution claim is barred by the statute of limitations.  We disagree with all these contentions.

## 1. Probable Cause
### a. The law

" '[T]he probable cause element calls on the trial court to make an objective determination of the "reasonableness" of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable,' as opposed to whether the litigant subjectively believed the claim was tenable. [Citation.] A claim is unsupported by probable cause only if ' " 'any reasonable attorney would agree [that it is] totally and completely without merit.' " ' [Citations.] 'This rather lenient standard for bringing a civil action reflects "the important public policy of avoiding the chilling of novel or debatable legal claims." ' [Citation.] The standard safeguards the right of both attorneys and their clients ' " 'to present issues that are arguably correct, even if it is extremely unlikely that they will win.' " ' " (*Parrish, supra,* 3 Cal.5th at p. 776.)

" 'A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him.' " (*Soukup, supra,* 39 Cal.4th at p. 292.) As *Parrish* tells us, " 'When there is a dispute as to the state of the defendant's knowledge and the existence of probable cause turns on resolution of that dispute, . . . the jury must resolve the threshold question of the defendant's factual knowledge or belief.' " (*Parrish, supra,* 3 Cal.5th at p. 781, fn. 4.)

We accept as true the plaintiffs' evidence about what defendants knew, and "through that lens, evaluat[e] whether the

13

[defendants'] claim(s) were legally and factually tenable." (*Gruber v. Gruber* (2020) 48 Cal.App.5th 529, 532.)

**b.    Contentions and conclusions**

We begin with this observation. This case does not concern a " ' "novel or debatable legal claim[]." ' " (*Parrish, supra,* 3 Cal.5th at p. 776.) The existence of probable cause is "purely a legal question" when "there is no dispute as to the facts upon which an attorney acted in filing the prior action." (*Sheldon Appeal Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 868 (*Sheldon Appeal*).) This is a case where there *is* a dispute as to the facts known to defendants when they filed Mr. Akhtarzad's complaint and cross-complaint. And if a jury decides that Mr. Akhtarzad and his lawyers knew he did not rely on any representations from Mr. Simantob when he signed the lease, and that he made other claims with no basis in fact, then defendants had no probable cause to bring Mr. Akhtarzad's complaint and cross-complaint. Judge Thomas made findings pertinent to those issues.

We will not repeat all the details of Judge Thomas's findings on the relevant issues (see pp. 7-9, *ante*), but they are worth bearing in mind. By way of example, Judge Thomas concluded Mr. Akhtarzad did not rely on any representations from Mr. Simantob when he signed the lease; he tried to terminate it because of his financial problems, not for the reasons he gave; there was no evidence Mr. Akhtarzad made any claims of illegalities until after Melrose filed its lawsuit; there was no basis for Mr. Akhtarzad's declaration that the $25,000 he offered to Mr. Simantob was for an agreed-upon rent modification; and there was no evidence for his contention he did not abandon the property.

14

Judge Thomas's findings are prima facie evidence that Mr. Akhtarzad was relying on facts he had "no reasonable cause to believe to be true" (*Soukup, supra,* 39 Cal.4th at p. 292) when he brought his affirmative claims against plaintiffs. If that evidence is credited by the factfinder, it would establish lack of probable cause. As plaintiffs say, there can be no probable cause when a party *knows* the factual allegations on which his claims depend are false.

Defendants resist this conclusion on several grounds. They point to the evidence Mr. Akhtarzad submitted to prove his claims that the second story on the property was constructed in 1994 and violated City of West Hollywood zoning ordinances on floor area ratios—"a fact that supported Akhtarzad's claims that plaintiffs hid the unpermitted expansion of the premises to entice him into the lease." Defendants miss the point. The fact of a zoning violation does not "provide[] ample probable cause for Akhtarzad to believe and assert that Simantob fraudulently induced him to enter the lease." It is the state of Mr. Akhtarzad's knowledge and the reasons he gave for his actions that are at issue.

Defendants primarily rely on an argument based on a doctrine that does not apply to these circumstances. They contend that Judge Kendig's denial of Melrose's motion for summary judgment in 2010 "conclusively established" probable cause "as a matter of law." They base this contention on the "interim adverse judgment" rule—the rule that " 'a trial court judgment or verdict in favor of the plaintiff . . . in the underlying case, unless obtained by means of fraud or perjury, establishes probable cause to bring the underlying action, even though the judgment or verdict is overturned on appeal or by later ruling of

15

the trial court.' " (*Parrish, supra,* 3 Cal.5th at p. 776.)  The rationale is that "if a claim succeeds at a hearing on the merits, then, unless that success has been procured by certain improper means, the claim cannot be 'totally and completely without merit.' " (*Ibid.*)  Courts have also applied the rule to the denial of defense summary judgment motions and similar defense efforts to terminate the underlying case before trial.  (*Parrish,* at pp. 776-777, citing cases; see also *Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375, 384 ["denial of defendant's summary judgment in an earlier case normally establishes there was probable cause to sue"].)

Of course, Melrose's 2010 summary judgment motion was far from a "normal" defense summary judgment motion.  It was principally plaintiff Melrose's motion for summary judgment on its own breach of contract claim, which would have been denied in any event because of issues on damages as well as other elements.  (See pp. 5-6, *ante.*)  The fact that Judge Kendig concluded there were disputed fact issues based on Mr. Akhtarzad's statements—for which the court later found there was no credible evidence—shows this is clearly not the species of "interim adverse judgment" to which the rule "normally" applies.  This is exactly the sort of circumstance under which a summary judgment ruling does *not* establish probable cause as a matter of law.

Defendants also contend that plaintiffs cannot rely on Judge Thomas's findings to establish a lack of probable cause for Mr. Akhtarzad's claims.  We disagree.  Those findings show, at a minimum, that a factfinder in the malicious prosecution case could reach the same conclusions.

16

Plaintiffs, on the other hand, argue at length that Judge Thomas's findings are entitled to preclusive (collateral estoppel) effect.  For this they cite *Key v. Tyler* (2019) 34 Cal.App.5th 505, and defendants counter that *Plumley v. Mockett* (2008) 164 Cal.App.4th 1031 supports the opposite view and also supports their claim that the findings are not evidence of lack of probable cause.

We agree with *Key* to the extent it held that a probate court's findings "concerning [the defendant's] undue influence, which this court affirmed, provide a sufficient basis to conclude that [the plaintiff] has shown a probability of success" on her no-contest petition; *Key* thus reversed the lower court's grant of the defendant's anti-SLAPP motion.  (*Key, supra,* 34 Cal.App.5th at p. 510.)  *Key*'s further discussion of the collateral estoppel effect of the probate court's findings was, in our view, unnecessary.  And *Plumley*, which held the trial court should have granted an anti-SLAPP motion, does not help defendants.  In *Plumley,* the court rejected the claim that certain state court findings (that the defendant's story " 'was completely and utterly false' ") were prima facie evidence of lack of probable cause to bring a federal patent interference claim.  (*Plumley, supra,* 164 Cal.App.4th at pp. 1048, 1051.)  However, the court reached that conclusion because the fraud at issue had been presented to *and rejected by* the trier of fact (the federal Board of Patent Appeals) in its initial (later reversed) interference decision.  (*Id.* at p. 1052.)  That is not the situation here.

In any event, there is no need here to give "preclusive effect" to Judge Thomas's findings about Mr. Akhtarzad's knowledge and motives in order to conclude, as we have, that plaintiffs' evidence, if credited by the factfinder, would establish

he lacked probable cause to bring his affirmative claims against plaintiffs. It may be that Judge Thomas's findings will have preclusive effect in deciding *the merits* of the malicious prosecution claim, but we need not decide that question in order to resolve this appeal.

To reiterate the point: Judge Thomas's findings show that a factfinder in the malicious prosecution action could conclude (as Judge Thomas did) that there was no evidence Mr. Akhtarzad was prevented from using the premises as a result of any alleged illegalities; and no evidence supporting Mr. Akhtarzad's claim that he executed the lease in reliance on misrepresentations by Mr. Simantob. If those points are accepted as true in the malicious prosecution action, they would establish that Mr. Akhtarzad had no probable cause to bring the lawsuit because he knew his claims—that Melrose/Simantob breached the contract by excluding him from the premises and made misrepresentations he relied on when he signed the lease—were false.

There is one other point. Defendants contend our 2013 decision remanding the case for a new trial was also an interim adverse ruling that "conclusively established" probable cause. That contention is entirely without merit. The court reversed because Mr. Akhtarzad had been prevented from submitting any evidence of fraudulent misrepresentations that conflicted with the terms of the lease, and a subsequent change in the law made that exclusion erroneous. The decision was not adverse in the sense of finding a lack of substantial evidence to support the judgment.

18

## 2. Malice

### a. The law

The malice element of a malicious prosecution claim " 'relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action. . . . The plaintiff must plead and prove actual ill will *or* some *improper* ulterior motive.' " (*Soukup, supra,* 39 Cal.4th at p. 292.)

"[A] lack of probable cause, standing alone, does not support an inference of malice," but "malice may still be inferred when a party *knowingly* brings an action without probable cause." (*Swat-Fame, Inc. v. Goldstein* (2002) 101 Cal.App.4th 613, 634 (*Swat-Fame*).)[2] "[A] corollary to this rule can be stated as follows: malice can be inferred when a party *continues* to prosecute an action after becoming aware that the action lacks probable cause." (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 226 (*Daniels*).)

An attorney's liability depends on his own improper motive; the client's malice cannot be imputed to his attorneys. (*Daniels, supra,* 182 Cal.App.4th at p. 225.) "While 'the attorney is entitled to rely on information provided by the client' [citation], once the lawyer discovers the client's statements are false, the lawyer cannot rely on such statements in prosecuting an action." (*Golden State Seafood, Inc. v. Schloss* (2020) 53 Cal.App.5th 21, 36-37.)

### b. Background facts

Defendant Drucker signed and filed Mr. Akhtarzad's verified complaint against Mr. Simantob and his cross-complaint

---

[2] *Swat-Fame* was disapproved on other grounds in *Zamos v. Stroud* (2004) 32 Cal.4th 958, 973, and *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, footnote 7.

19

against Melrose, and had represented Mr. Akhtarzad as early as 1992. Defendant Singer associated as Mr. Drucker's cocounsel in June 2010; they prepared Mr. Akhtarzad's opposition to the 2010 summary judgment motion; and they represented him at the 2011 bench trial until he discharged them midtrial.

Mr. Drucker continued to represent Mr. Akhtarzad in another case in 2011 (the Bolduc case) involving similar claims against Mr. Akhtarzad; that trial resulted in a jury verdict finding Mr. Akhtarzad had interfered with the performance of a lease, causing damages to the landlord of $8.9 million, and awarding punitive damages of $1 million.

Mr. Akhtarzad rehired both Mr. Drucker and Mr. Singer after our 2013 reversal of the judgment in the first trial. They continued to prosecute this litigation until the Foley Bezek firm took over in June 2016.

As previously mentioned, Foley Bezek filed the anti-SLAPP motion, and Mr. Akhtarzad and attorneys Drucker and Singer filed joinders in the motion. Plaintiffs sought relief from the automatic discovery stay, and Foley Bezek then (May 4, 2021), in its opposition brief, withdrew its argument that plaintiffs could not show malice. Foley Bezek did so in order to avoid the "burdensome discovery" plaintiffs sought that would create "mammoth privilege and work-product issues." Its opposition brief stated: "Foley Bezek will not pursue, in its anti-SLAPP motion, its secondary argument that Plaintiffs cannot demonstrate malice. Once that issue is off the table, no other issue of 'state of mind' nor any other issue requiring discovery remains."

Mr. Akhtarzad filed a notice of joinder in Foley Bezek's opposition to plaintiffs' motion for relief from the discovery stay,

20

incorporating by reference "the facts, law, and arguments set forth in" Foley Bezek's opposition brief.

Foley Bezek eventually settled with plaintiffs, and on December 6, 2021, was dismissed from the case. On December 30, 2021, plaintiffs filed their opposition to the joinders of the three remaining defendants. Among other points, plaintiffs stated that Foley Bezek, the moving party, expressly withdrew the malice basis of its anti-SLAPP motion.

On January 6, 2022, the three defendants filed their replies. Mr. Akhtarzad made no argument on malice. Neither did Mr. Drucker. Mr. Singer described the malice standard, and argued plaintiffs' evidence the defendants lacked probable cause and acted with malice "is all inadmissible." None of the three defendants mentioned plaintiffs' statement about Foley Bezek's withdrawal of the malice claim.

The trial court concluded that all three defendants withdrew their argument that plaintiffs could not show malice.

### c. Contentions and conclusions

We conclude Foley Bezek and Mr. Akhtarzad withdrew any contention that plaintiffs lacked evidence of malice. Mr. Akhtarzad's express joinder in and adoption of Foley Bezek's arguments in its opposition brief make that plain.

We further conclude Mr. Drucker and Mr. Singer forfeited any contention plaintiffs lacked evidence of malice by not developing facts and argument on malice after Foley Bezek and Mr. Akhtarzad withdrew the argument. In any event, however, there is sufficient evidence of malice.

Defendants insist that plaintiffs "presented *no* legal argument or admissible evidence that [they] acted with malice." For this, they cite only plaintiffs' opposition memorandum,

21

without explanation. The opposition memorandum, filed after Foley Bezek was dismissed from the case, argues that Mr. Drucker and Mr. Singer chose to go back to representing Mr. Akhtarzad in the continued prosecution of his claims, even after he discharged them in the middle of the first trial, did not testify, and put on virtually no evidence to support his claims. The memorandum cites a January 2015 letter from Mr. Singer to a City of West Hollywood official, asking him to "clarify" multiple issues of claimed illegalities in the Melrose property, yet the City of West Hollywood never deemed the building illegal or took any action against it. As described above, Mr. Drucker also represented Mr. Akhtarzad in another similar case in 2011 where the jury assessed punitive damages against Mr. Akhtarzad.

The evidence of malice with respect to the complaint for breach of the lease against Mr. Simantob is clear. Defendants stated in Mr. Akhtarzad's summary judgment opposition in 2010 that Mr. Simantob executed the lease in his capacity as manager of Melrose, so they knew he was not a party to the lease. When they were rehired in 2013, they must have known of Judge Kendig's finding at the first trial in 2011 that there was no evidence Mr. Simantob was ever acting in his individual capacity, but rather solely as Melrose's manager. There is thus prima facie evidence they knew by this time that the breach of lease claim against Mr. Simantob was not objectively tenable. Yet they continued to prosecute the case. (In February 2017, Foley Bezek (who took over in 2016), dismissed Mr. Akhtarzad's causes of action against Mr. Simantob for breach of the lease and an accounting.)

With respect to Mr. Akhtarzad's claims of fraud and his claim of breach of lease against Melrose, plaintiffs contend that

there is prima facie evidence Mr. Drucker and Mr. Singer "may have known that the factual allegations on which [their] action depended were untrue" (*Sheldon Appel, supra,* 47 Cal.3d at p. 881), and that this is enough "to clear step two's minimal merits hurdle."  Plaintiffs cite the fact that Mr. Drucker had Mr. Akhtarzad verify the complaint against Mr. Simantob, and that he several times added "(As to Objections Only)" to Mr. Akhtarzad's verified interrogatory responses.  Plaintiffs argue Mr. Akhtarzad's unwillingness to testify under oath at the first trial was a "red flag," as was the verdict in the 2011 Bolduc trial, and all of this should have given Mr. Drucker and Mr. Singer "grave concern" before Mr. Akhtarzad rehired them in 2013.

Malice is a question of fact.  We agree with plaintiffs that a jury could reasonably infer from the evidence described above that Mr. Drucker and Mr. Singer knew their client was not telling the truth about fundamental allegations supporting his claims, yet continued to prosecute the claims through June 2016.

Defendants contend plaintiffs cannot rely solely on their arguments about lack of probable cause to establish malice.  To this we can only repeat:  While lack of probable cause alone does not support an inference of malice, "malice may still be inferred when a party *knowingly* brings an action without probable cause" (*Swat-Fame, supra,* 101 Cal.App.4th at p. 634), and "malice can be inferred when a party *continues* to prosecute an action after becoming aware that the action lacks probable cause" (*Daniels, supra,* 182 Cal.App.4th at p. 226).

### 3.     The Statute of Limitations

Defendants argue that the statute of limitations bars Mr. Simantob's (not Melrose's) malicious prosecution claim.  The contention is meritless.

The statute of limitations is one year for Mr. Simantob's claim against the lawyers and two years for his claim against Mr. Akhtarzad.  (See, e.g., *Vafi v. McCloskey* (2011) 193 Cal.App.4th 874, 880; see also Code Civ. Proc., § 340.6.)  Mr. Simantob's malicious prosecution action was timely under either statute.

The statute begins to run on a malicious prosecution action on the date the underlying action is terminated in favor of the plaintiff.  But the time for filing the action is tolled while the underlying judgment is on appeal.  (*Gibbs v. Haight, Dickson, Brown & Bonesteel* (1986) 183 Cal.App.3d 716, 722.)

Here, the judgment after the second trial was entered on June 14, 2018.  Mr. Akhtarzad appealed from the judgment on July 11, 2018, tolling the statute from that date until the appeal process was exhausted, in this case upon issuance of our remittitur on September 10, 2020.  (Case No. B288963.)  Mr. Simantob and Melrose filed their malicious prosecution claims against the lawyers on October 14, 2020, and their first amended complaint including Mr. Akhtarzad as a defendant on December 24, 2020.  The statute of limitations ran for 27 days before it was tolled by the appeal, and began to run again on September 10, 2020.  Thus the statute ran for only a few months before Mr. Simantob and Melrose filed their malicious prosecution claims.

Defendants argue, however, that Mr. Akhtarzad "appealed only the judgment entered on behalf of Melrose," so that

24

Mr. Simantob "cannot claim the benefit of this tolling." Defendants are mistaken.

Mr. Akhtarzad's notice of appeal in the underlying case states only that he appeals from the June 14, 2018 judgment. (We grant plaintiffs' request for judicial notice of the notice of appeal as a court record.) Nonetheless, Mr. Akhtarzad claims that Mr. Simantob was not a party to the appeal because Mr. Akhtarzad identified only Melrose in his July 30, 2018 civil case information statement (CCIS) when asked to list all the parties who would participate in the appeal. He contends the CCIS and his opening brief in the underlying appeal confirm that he appealed only the judgment in favor of Melrose, and "only Melrose was identified as a respondent in the Court of Appeal's opinion."

We reject this claim. It is true that Mr. Akhtarzad did not challenge the judgment in favor of Mr. Simantob on Mr. Akhtarzad's fraud claims (which were the same as his fraud claims against Melrose). But his opening brief in the underlying case (heading II) stated the trial court erred "in entering judgment for Melrose and Simantob" because the lease was illegal and unenforceable. At page 35 of his opening brief, he similarly contended that the trial court "erred in entering judgment for Melrose and Simantob based on the illegal Lease. Judgment must be reversed."

Moreover, the judgment provided that Mr. Simantob was entitled to recover legal fees and costs, and ordered that he and Melrose were jointly and severally entitled to fees and costs of $1,322,321.52. In his opening brief in the underlying case, Mr. Akhtarzad specifically sought reversal of Mr. Simantob's fee award, stating that "[a]lthough Simantob is not expressly listed

as a party to the appeal, this is not an impediment to reversing his award of fees and costs."

Further, the respondents' brief in the underlying case was filed on behalf of both Melrose and Mr. Simantob, and argued that the judgment for Mr. Simantob, including the fee award, should be affirmed in full.

Mr. Akhtarzad insists that appellate courts "routinely look to the [CCIS] and the parties' briefing" to determine the parties to an appeal, and cites four cases that mention a CCIS for one reason or another. None of the cases suggests that a party not listed in the CCIS is therefore not a party to the appeal, and they are all factually inapt. There is no authority for concluding the statute of limitations continued to run against Mr. Simantob just because Mr. Akhtarzad did not name him in the CCIS. Mr. Simantob was entitled to and did file a respondent's brief. Mr. Akhtarzad's statements in his opening brief, and particularly his claim that Mr. Simantob's attorney fee award should be reversed, definitively refute his claim.

## DISPOSITION

The trial court's order denying defendants' anti-SLAPP motions is affirmed. Respondents are entitled to recover costs on appeal.

GRIMES, J.

WE CONCUR:

STRATTON, P. J.          WILEY, J.

26