Filed 6/12/25  Parter Medical Products v. The Dominguez Firm CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| PARTER MEDICAL PRODUCTS,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>THE DOMINGUEZ FIRM, LLP, et al.,<br><br>Defendants and Appellants. | B335336<br><br>(Los Angeles County<br>Super. Ct. No. 23SMCV03282) |

APPEAL from an order of the Superior Court of Los Angeles County.  Edward B. Moreton, Jr., Judge.  Affirmed.

Nemecek & Cole, Michael McCarthy and Howard Smith for Defendants and Appellants.

Mohajerian and Al Mohajerian for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

An employer successfully moved for summary judgment in an action for wrongful termination and related statutory claims under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA) brought by one of its former employees.  The employer then filed this action for malicious prosecution against the law firm and three individual attorneys who represented the employee in the employment action.  The attorneys filed a special motion to strike under Code of Civil Procedure[1] section 425.16, commonly referred to as the anti-SLAPP statute, which the trial court denied.  The attorneys now appeal from the denial, contending the trial court erred because the employer failed to meet its burden of demonstrating that its malicious prosecution claims had the requisite minimal merit to proceed.

We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**1.    The parties**

Plaintiff and respondent Parter Medical Products (Parter Medical) is the former employer of Victoria Flores.  Flores, who is not a party to this action, suffered a workplace injury and hired defendant and appellant The Dominguez Firm, LLP (Dominguez Firm) to handle her workers' compensation claim.  The Dominguez Firm also represented Flores in a subsequent civil action against Parter Medical for wrongful termination and related FEHA claims.  Defendants and appellants Jace H. Kim (Kim), Carlos Andres Perez (Perez) and Javier Ramirez (Ramirez) were associate attorneys of the Dominguez Firm.

---

[1]    All further undesignated statutory citations are to the Code of Civil Procedure.

## 2. The workers' compensation claim

Flores worked as a packer for Parter Medical. In February 2018, she submitted a claim for workers' compensation related to an injury to her right hand and wrist, and was placed on medical leave. Flores hired the Dominguez Firm to handle her claim.

Flores received medical treatment and physical therapy and, in early 2019, underwent surgery on her right hand and wrist from Dr. Liz Stark. In June 2019, Dr. Stephen Nichols, the panel qualified medical examiner appointed to Flores's case, issued his report. Dr. Nichols said Flores suffered from "severe osteoarthritis" and would continue to need occupational therapy. In his opinion, Flores should be precluded from "lifting, carrying, pushing and pulling objects in excess of 20 pounds on a frequent basis."

On September 4, 2019, Attorney Robert Choi, representing Republic Indemnity Company of California (Republic Indemnity), sent a letter to attorney Juan Dominguez of the Dominguez Firm, proposing settlement options for Flores's claim in light of Dr. Nichols's report. Choi said, "Your client has the option of clarifying further with [Dr. Nichols], to move forward with the interactive process with the employer to address Dr. Stark's permanent work restrictions, and then to finalize her case by way of a Stipulated Award with future care. [¶] However, I have been authorized to offer your client a Compromise and Release settlement" if Flores agreed to submit a voluntary resignation from her employment with Parter Medical in return for the lump sum settlement.

Thereafter, Choi and Attorney Allan Carvalho of the Dominguez Firm discussed settlement options via e-mail. The Dominguez Firm initially proposed that Flores sign a release

3

acknowledging her "separation" from Parter Medical. Choi said that separation language would not be acceptable and that Flores would need to resign from her employment with Parter Medical. The Dominguez Firm acquiesced and forwarded to Choi a resignation signed by Flores. The document was titled "Voluntary Resignation From Employment" and stated that Flores was resigning "voluntarily and of [her] own free will without undue influence or coercion of any kind."

Flores received a payment of $60,000 in settlement of her claim. The settlement was approved by the Workers' Compensation Appeals Board.

### 3. The underlying employment action

After settling her workers' compensation claim, Flores, still represented by the Dominguez Firm, filed a complaint against Parter Medical (*Victoria Flores v. Parter Medical Products, Inc.* (Super. Ct. Los Angeles County, 2022, No. 20STCV37223; the "underlying action"), alleging six causes of action: (1) discrimination in violation of FEHA; (2) retaliation in violation of FEHA; (3) failure to prevent discrimination and retaliation in violation of FEHA; (4) failure to accommodate in violation of FEHA; (5) failure to engage in good faith interactive process in violation of FEHA; and (6) wrongful termination in violation of public policy.

Defendant Kim signed the complaint. Defendants Perez and Ramirez were listed as counsel of record with Kim but were not signatories.

All six causes of action arose from the same basic factual allegations. Flores alleged that after working as a packer for Parter Medical for almost twenty years, she began to experience significant pain in her right hand and wrist. She reported her

4

symptoms to her superiors at Parter Medical, who delayed sending her to a doctor until January 9, 2018. The doctor placed Flores on modified work duties and ordered her not to lift more than 10 pounds. Flores alleged that Parter Medical thereafter discriminated and retaliated against her due to her disability and because she hired a lawyer. She further alleged that Parter Medical failed to make good faith efforts to discuss reasonable accommodations with her, and instead forced her to take an unpaid medical leave of absence and then did not allow her to return to work.

At her deposition, Flores admitted she signed the resignation at the Dominguez Firm in connection with settling her workers' compensation claim. But she also testified that before signing it, she had called about getting her job back and was told "there wasn't any more work for me there. And they told me that I was not to show up there, I was not to call there, and they hung up on me." Flores said she spoke with "Lina at human resources" and she said there was no more work for her because she had hired an attorney.

Later, Flores reiterated, "I had called over the phone to ask them to give me my job back and they said that they wouldn't." "I called human resources over the phone and I spoke to Lina, asking for my job back. And I was told that there wasn't any more work for me, that there's no reason why I should be calling, that there is no reason why I should be going there because I hired an attorney." Flores said she felt the way Lina treated her was "discrimination," but also admitted that her doctors told her she should not be lifting more than 10 pounds.

On September 22, 2021, Parter Medical sent a letter to the Dominguez Firm asserting that based on Flores's admissions that

she had voluntarily resigned, it was clear she had not been terminated and the Dominguez Firm had "engaged in malicious prosecution" in filing the action. Parter Medical requested a dismissal of the action.

Flores did not dismiss the action, and Parter Medical subsequently moved for summary judgment.

In August 2022, summary judgment was granted in favor of Parter Medical in the underlying action. The court found that Flores had resigned from her job voluntarily and had not been terminated and that this evidence was fatal to the first, second, third, and sixth causes of action, all of which required a termination or other adverse employment action to be viable, and Flores had alleged wrongful termination as the adverse action taken against her. The court acknowledged the testimony from Flores that she felt she had been terminated when she inquired about coming back to work, but the court explained she never received a "formal notice of termination." With respect to the fourth and fifth causes of action, the court explained that in order to prevail on those claims, Flores bore the burden of establishing that she could perform the essential functions of her job. The court found that Flores had failed to raise a triable issue that she could perform her job or that Parter Medical had an alternative position she could perform with her medical restrictions.

## 4.    The current action for malicious prosecution

Parter Medical then filed this action for malicious prosecution against the Dominguez Firm and individual defendants Kim, Perez and Ramirez.

Parter Medical alleged the Dominguez Firm initiated each of the six causes of action in the underlying action without probable cause and with malice. The complaint alleged the

6

Dominguez Firm had represented Flores in the workers' compensation proceeding, drafted her voluntary resignation, and therefore knew at all times that Parter Medical had not terminated Flores from her job, wrongfully or otherwise. The Dominguez Firm also knew that Parter Medical had not failed to engage in the interactive process, that Flores had been given a permanent lifting restriction that made it impossible for her to work as a packer, and that Parter Medical did not have an alternative position to offer her given her medical limitations. Parter Medical alleged there was malice because the attorneys filed and maintained the underlying action with knowledge their client had not been wrongfully terminated and was no longer capable of meeting the requirements of her job.

### 5. The anti-SLAPP motion

Defendants filed their anti-SLAPP motion in October 2023, arguing they brought and maintained the underlying action with a good faith belief the action was tenable. Defendants requested the trial court to strike the entire complaint as to all defendants, as to each cause of action individually, or alternatively as to all allegations of malicious prosecution that occurred before September 22, 2021 (the date Parter Medical sent the letter to defendants about Flores's deposition admissions). The motion also argued the court should strike all claims against individual defendants Perez and Ramirez on the additional ground that neither of them worked on the underlying action.

Parter Medical relied on its papers and evidence from the underlying summary judgment proceedings to oppose the anti-SLAPP motion. Those papers included a declaration from Kaisalina "Lina" Taulealea, Parter Medical's human resources manager, and Rhonda Cooper, an employee of Republic

7

Indemnity. The exhibits included copies of the correspondence between attorney Choi and the Dominguez Firm about the settlement of the workers' compensation proceeding, Flores's timesheets, the job description for a packer, medical reports and correspondence from the workers' compensation file, Flores's responses to requests for admissions, and an excerpt from the deposition of Parter Medical's person most knowledgeable designee, Ali Abu Debei.

Taulealea attested to various company records and confirmed that Flores worked as a packer for some twenty years. She said the job regularly required lifting boxes over 10 pounds, and often as heavy as 20 to 28 pounds. She said Flores took a leave of absence in early January "due to medical issues" which caused her to need to wear a splint and refrain from lifting more than 10 pounds. Flores returned to work on February 5, 2018, and worked that day without restrictions, but then never returned to work, never provided a reason for not returning to work, and failed to return Taulealea's phone calls.

Taulealea said Parter Medical received notice on February 15, 2018, that Flores filed a workers' compensation claim, and a week later it received notice she obtained legal representation with the Dominguez Firm. Taulealea confirmed that Parter Medical received all of the medical reports regarding Flores's injury and work restrictions, and that Parter Medical did not have a position that could have accommodated those restrictions. Parter Medical was notified in August 2019 that Flores had a permanent restriction of lifting no more than 10 pounds and that Republic Indemnity had provided a return to work voucher, stating that if Parter Medical could accommodate

8

that restriction they should notify Flores within 60 days, or let them know if they could not accommodate Flores.

Cooper of Republic Indemnity attested to the handling of Flores's workers' compensation claim, up to and including the settlement discussions involving Choi and the Dominguez Firm.

Flores's responses to requests for admissions in the underlying action were signed by defendant Kim. In her responses, she admitted that regularly lifting more than 10 pounds was a requirement of her job as a packer; that she spoke with Parter Medical, before signing her resignation, about whether "possible positions" were available; and that she voluntarily signed the resignation in September 2019 as part of the settlement of her workers' compensation claim.

In his deposition testimony, Debei said it was not possible for Parter Medical to accommodate a request for a packer to lift only 10 pounds or less. Because of the nature of the products they packaged and shipped, the position could not be performed with this restriction. Debei also confirmed that once the company was aware that Flores had a lawyer, they did not communicate directly with her anymore, but only spoke through the lawyers. Debei confirmed that Flores was considered an employee during the pendency of her workers' compensation proceedings and was not terminated by Parter Medical.

The hearing on defendants' anti-SLAPP motion was held on November 14, 2023. The parties briefly argued regarding the court's tentative to deny the motion and then the court took the matter under submission. Later the same day, the court issued its written order denying defendants' motion in its entirety. The court found that defendants satisfied the first prong of the statute because the filing of the underlying action constituted

petitioning activity. As to the second prong, the court concluded that Parter Medical had shown the requisite minimal merit to proceed.

This appeal followed.

## DISCUSSION

## 1. General law regarding anti-SLAPP motions

The Legislature enacted section 425.16 to provide a procedure for the early dismissal of frivolous causes of action that infringe on the rights to free speech and to petition for a redress of grievances. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060.) The statute states that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

In resolving an anti-SLAPP motion under section 425.16, the trial court engages in a two-step analysis. The court must first determine whether the moving defendant "has made a threshold showing that the challenged cause of action is one arising from protected activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).) If the court determines the defendant met this initial burden, the burden shifts to the plaintiff and the court "must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Ibid*.) Only those causes of action that satisfy both prongs of section 425.16, arising from protected activity and

10

lacking minimal merit, are stricken under the statute. (*Navellier*, at p. 89.)

We independently review a ruling on an anti-SLAPP motion, applying the same two-step analysis as the trial court. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*); *Bowen v. Lin* (2022) 80 Cal.App.5th 155, 161.)  We consider the pleadings and the admissible evidence submitted in the moving and opposing papers.  (§ 425.16, subd. (b)(2).)  We accept as true all evidence favorable to the nonmoving plaintiff and do not compare the weight of the parties' evidence or make credibility determinations.  We only evaluate the moving defendant's evidence to determine if it defeats the plaintiff's evidence as a matter of law.  (*Soukup*, at p. 269, fn. 3.)

The denial of an anti-SLAPP motion is not a finding the claim will prevail on the merits, only that it has the requisite minimal merit to proceed past the pleading stage.  (§ 425.16, subd. (b)(3) ["If the court determines that the plaintiff has established a probability that the plaintiff will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding"].)

## 2. The first prong

It is undisputed defendants satisfied the first prong of the anti-SLAPP statute.  Malicious prosecution of a civil proceeding is a cause of action arising from protected activity.  (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735 [every reviewing court "that has addressed the question has concluded

11

that malicious prosecution causes of action fall within the purview of the anti-SLAPP statute"].)  The burden therefore shifted to Parter Medical to demonstrate the second prong, i.e., that its malicious prosecution claims had the requisite minimal merit to proceed.  (*Navellier*, *supra*, 29 Cal.4th at p. 94.)

## 3.    The second prong

To defeat defendants' motion, Parter Medical was required to demonstrate its malicious prosecution action was " 'both legally sufficient and supported by a sufficient prima facie showing of facts to sustain' " a judgment in its favor if its evidence was credited.  (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 (*Wilson*).)

A cause of action for malicious prosecution consists of three elements:  (1) favorable termination of the underlying action; (2) the underlying action was brought or maintained without probable cause; and (3) the underlying action was brought or maintained with malice.  (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871; accord, *Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 775 (*Parrish*).)

There is no dispute the grant of summary judgment in favor of Parter Medical was a favorable termination of the underlying action.  Defendants' anti-SLAPP motion contested only the existence of the elements of probable cause and malice. We conclude Parter Medical met its burden of showing the requisite minimal merit to proceed with its malicious prosecution action.

### 3.1    Probable cause

The probable cause element of a malicious prosecution claim requires " 'the trial court to make an objective determination of the "reasonableness" of the defendant's conduct,

i.e., to determine whether, on the basis of the facts known to the defendant, the institution [or maintenance] of the prior action was legally tenable.' " (*Parrish*, *supra*, 3 Cal.5th at p. 776.) The question is a legal one for the court to resolve to protect litigants and their attorneys from "the danger that a lay jury would mistake a merely unsuccessful claim for a legally untenable one." (*Wilson*, *supra*, 28 Cal.4th at p. 817.)

In other words, "probable cause exists if 'any reasonable attorney would have thought the claim tenable.' [Citation.] This rather lenient standard for bringing a civil action reflects 'the important public policy of avoiding the chilling of novel or debatable legal claims.' " (*Wilson*, *supra*, 28 Cal.4th at p. 817.) The Supreme Court has made clear that "[o]nly those actions that ' "any reasonable attorney would agree [are] totally and completely without merit" ' may form the basis for a malicious prosecution suit." (*Ibid*.)

The crux of the parties' dispute focuses on whether Flores was terminated from her job or resigned, and whether she was capable of performing the essential functions of her job.

Defendants argue that just because the underlying action did not survive summary judgment does not mean the action was legally untenable. This is unquestionably true, but it does not answer the question of whether a reasonable attorney, knowing what the Dominguez Firm knew from its representation of Flores in the workers' compensation proceeding, would have thought the claims against Parter Medical were legally tenable.

Defendants contend that Flores had a good faith belief she had been terminated by Parter Medical long before she signed the resignation as a condition of settling her workers' compensation claim. The record demonstrates that Flores

13

certainly felt she had been treated dismissively by Taulealea, Parter Medical's human resources manager, when she inquired about returning to work, and that she may very well have believed she had been terminated during one of her telephone conversations with Taulealea.

But defendants were required to assess the information received from their client with legal acumen and determine, as lawyers, the relative merit of pursuing civil claims against her employer. Contrary to what Flores, as a lay person, believed had occurred, the record demonstrates the Dominquez Firm and its attorneys knew, prior to filing the underlying action, that: (1) Parter Medical and the workers' compensation carrier, Republic Indemnity, treated Flores as an employee, not a former employee, while the workers' compensation proceeding was pending; (2) Flores had a medical disability that interfered with her ability to continue doing her job as a packer; (3) Flores had been offered options for resolving her workers' compensation claim, including moving "forward with the interactive process" with Parter Medical to determine if a reasonable accommodation was possible, or resigning from her employment and obtaining a one-time payment in settlement of her claim; and (4) Flores, with the assistance of the Dominguez Firm, chose the one-time payment and signed a voluntary resignation from her employment with Parter Medical.

Despite knowing these facts, defendants assert there was probable cause to believe their client had been wrongfully terminated and denied the opportunity to return to work despite her ability to do so. In his supporting declaration, defendant Kim states, in conclusory fashion, that the underlying action was not brought "for an improper purpose," and that "there was a good

14

faith belief in the merits of the action as the evidence and legal authority relied upon provided probable cause for bringing the action and negated any possible malice." He makes no effort to explain or discuss the significance of the information the Dominguez Firm necessarily obtained during its representation of Flores in the workers' compensation proceedings.

Defendants make two additional arguments in an attempt to downplay the fact that, in deposition and in requests for admission, Flores conceded she had resigned from her job and had been told by doctors, even postsurgery, to refrain from repetitive lifting of heavy objects.

First, defendants say it is "significant" the trial court, in granting summary judgment to Parter Medical, devoted multiple pages of its ruling discussing their evidence. Defendants say the trial court's analysis reflects their evidence was substantial enough to support a finding that the claims were legally tenable.

But a trial court, in granting summary judgment, is required to "specify the reasons for its determination. The order shall specifically refer to the evidence proffered in support of and, if applicable, in opposition to the motion that indicates no triable issue exists. The court shall also state its reasons for any other determination." (§ 437c, subd. (g).) The trial court here simply complied with this statutory requirement to explain the bases of its ruling.

A review of the exhibits defendants submitted in opposition to the summary judgment is equally unhelpful. For instance, one of the exhibits was an e-mail from October 2018 showing Republic Indemnity asking Taulealea whether Flores had returned to work. Taulealea responded by saying, "No. Doesn't she have a lawyer? Why would she come back to work?" This

15

comment by Taulealea is not evidence supporting a reasonable belief that Flores had been terminated by Parter Medical. Rather, it reflects Taulealea's belief it was unlikely that Flores would return to work while she was relying on the advice of counsel during her workers' compensation proceeding.

Defendants also assert there was a reasonable dispute about the significance and scope of Flores's resignation, citing to *Camacho v. Target Corporation* (2018) 24 Cal.App.5th 291 (*Camacho*). Essentially, they appear to argue that Flores resigned to secure a settlement in her workers' compensation case, but that she did not resign from her job for the purposes of her FEHA claims. However, *Camacho* is of no assistance to defendants. *Camacho* concerned the scope of a release agreement in a workers' compensation proceeding and whether it constituted a release of all civil claims, including claims falling outside of the workers' compensation system. (*Id*. at pp. 293–294.) *Camacho* did not address, resolve or attempt to define the legal distinctions of an employee's voluntary resignation versus termination by an employer.

### 3.2 Malice

The malice element of a malicious prosecution claim concerns " 'the *subjective intent or purpose* with which the defendant acted in initiating the prior action. [Citation.] The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose. [Citation.] The plaintiff must plead and prove actual ill will *or* some *improper* ulterior motive.' [Citations.] Malice 'may range anywhere from open hostility to indifference. [Citations.] Malice

16

may also be inferred from the facts establishing lack of probable cause.' " (*Soukup*, supra, 39 Cal.4th at p. 292.)

Parter Medical alleged that defendants pursued the underlying action in order "to harass and hustle" Parter Medical into paying additional money defendants "knew they were not entitled to under the law." Lawsuits initiated or continued with " 'the hallmark of an improper purpose' " include those maintained for " ' " 'the purpose of forcing a settlement which has no relation to the merits of the claim.' " ' " (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1407.) "Additionally, 'if the trial court determines that the prior action was not objectively tenable, the extent of a defendant attorney's investigation and research may be relevant to the further question of whether or not the attorney acted with malice.' " (*Ibid*.)

The showing by Parter Medical adequately establishes, for purposes of defeating the motion, that the Dominguez Firm and its attorneys knew, from its representation of Flores in the workers' compensation proceeding, that she had resigned and had not been terminated and that she had physical limitations that impacted her ability to continue to do her job as a packer. The reasonable inference from that evidence is that the claims against Parter Medical were knowingly pursued for the improper purpose of attempting to obtain additional monies from Parter Medical without regard to the merit of the wrongful termination and FEHA claims. "Additional proof of malice can consist of evidence a party *knowingly* brings an action without probable cause." (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 226.)

17

### 3.3 Defendants Perez and Ramirez

Defendants argue the motion should have been granted as to individual defendants Perez and Ramirez on the additional ground there is no evidence they ever worked on the underlying action or otherwise provided legal representation to Flores. We disagree.

Defendants Perez and Ramirez were listed as attorneys of record with defendant Kim on both the complaint in the underlying action and the opposition papers to the summary judgment motion. They both deny, without any elaboration, any involvement in the handling of the case. They do not state they were unaware they were being identified as counsel of record with defendant Kim, that it was done without their authority or approval, or that they objected to lending their names to the pleadings.

Under *Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, the motion was properly denied as to both of them. *Cole* concluded that attorneys who had not signed any pleadings or otherwise worked on the case, but had allowed their names to be listed as cocounsel of record could not avoid "liability for malicious prosecution merely by showing that they took a passive role in that case as standby counsel who would try the case in the event it went to trial." (*Id*. at p. 1100.) Similarly, the failure of Perez and Ramirez to make any showing that they independently assessed the validity of the claims asserted against Parter Medical, supports the inference they "lent their names to the case with indifference to its actual merit." (*Id*. at p. 1120.)

Defendants argue it was Parter Medical's burden to present evidence that Perez and Ramirez actually knew their names were

18

included on the pleadings. Parter Medical's evidence demonstrated that Perez and Ramirez were listed as counsel of record on the operative complaint and on the summary judgment opposition papers. One reasonable inference from that evidence is that they were aware they were listed as cocounsel of record. (Evid. Code, § 600, subd. (b) ["An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action"].) We conclude it was sufficient evidence to meet the standard for opposing the anti-SLAPP motion. The trier of fact will have to decide whether, in light of all the evidence ultimately presented on the merits, it is sufficient to support judgment in Parter Medical's favor.

## DISPOSITION

The order denying defendants and appellants The Dominguez Firm, Jace H. Kim, Carlos Andres Perez and Javier Ramirez's special motion to strike is affirmed.

Plaintiff and respondent Parter Medical Products shall recover its costs of appeal.

VIRAMONTES, J.

WE CONCUR:

WILEY, Acting P. J.

MATTHEWS, J.*

---

*    Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20